[Crim. No. 75.  First Appellate District.—October 2, 1907.]

## THE PEOPLE, Respondent, v. GEORGE D. COLLINS, Appellant.

CRIMINAL LAW—PERJURY—SUFFICIENCY OF INDICTMENT—ASSIGNMENT OF PERJURY—FALSITY OF TESTIMONY.—In an *indictment* for perjury, an assignment of perjury as respects the falsity of the testimony of the defendant set forth as material to the issue in a prior action is sufficient when the indictment avers that the testimony then and there given by defendant contrary to his oath was and is false and untrue, and was, at the time of the giving thereof, known by the defendant to be false and untrue.

ID.—FALSE TESTIMONY AS TO MARRIAGE—GENERAL AND PARTICULAR NEGATION—TRUTH OF PARTICULAR FACTS.—An indictment charging the defendant with willful and corrupt testimony contrary to his oath in a prior action, that at a certain time and place a marriage ceremony was performed between him and Agnes Newman by a clergyman named, in the presence of named witnesses, and generally averring its falsity, and defendant's knowledge thereof, is not insufficient because the truth of such testimony is also particularly negatived, and a particular averment is made that the truth and the facts were that at the same time and place, by the same clergyman and in presence of the same witnesses, a marriage ceremony was performed between defendant and Charlotta E. Newman.

ID.—TIME AND PLACE—NEGATIVE PREGNANT NOT INVOLVED.—There being no substantive averment of a marriage ceremony between defendant and Agnes Newman, but only of the fact that he so testified, the particular negation of his testimony in relation thereto does not involve any negative pregnant as to the time and place of the marriage. Testimony as to time and place may be, and often is, material.

ID.—GIST OF CHARGE OF PERJURY—ENTIRE INDICTMENT TO BE CONSIDERED.—In determining the meaning of the indictment, the entire indictment is to be considered, from which it appears that the gist of the charge of perjury is that defendant falsely testified that a certain marriage ceremony that in truth was performed between defendant and Charlotta E. Newman was performed between him and Agnes Newman.

ID.—MATERIALITY OF TESTIMONY—SUFFICIENCY OF AVERMENT.—An averment in the indictment that the testimony given by the defendant in the prior action "was material to the said action and the said trial hereinbefore described, and material to the issues tendered in said cause," and that the defendant, in so testifying, "testified in a matter material to the said trial and said action and the issues therein," is sufficient, when it does not affirmatively appear from any other averments that it was immaterial.

ID.—ADMINISTRATION OF OATH—AUTHORITY OF DEPUTY COUNTY CLERK. A deputy county clerk is *ex officio* a clerk of the superior court, and as such has power upon the trial of an action in such court to administer oaths to witnesses.

ID.—FORM OF OATH.—Where the form of the oath set forth in the indictment is not precisely the same as that given in section 2094 of the Code of Civil Procedure, but is in substance the same, the departure in the regular form of the oath is no defense to a prosecution for perjury.

ID.—SUPPORT OF VERDICT—MATERIAL FALSE TESTIMONY IN FORMER PROSECUTION.—Where it appeared upon the trial of the present prosecution that in a former prosecution for perjury defendant was charged with having sworn falsely to an answer in an action for maintenance by Charlotta E. (Newman) Collins as his alleged wife, that she was not his wife, and the fact and date of her marriage to him were set forth in the former indictment to which defendant pleaded not guilty, the fact of such marriage was material to the issue, and his false testimony therein that he never married Charlotta E. Newman, and had married Agnes Newman at the time specified, was sufficient to support the verdict of guilty under the present indictment, and to support every material averment thereof.

ID.—EVIDENCE PROPERLY EXCLUDED.—The court properly excluded evidence offered by defendant that upon the trial of the former prosecution he testified that there was originally a contract marriage between him and Agnes Newman, and that the ceremony was only performed out of deference to her religious scruples. The materiality of the testimony in contradiction of the ceremony with Charlotta could not be affected by the needlessness of a ceremony with Agnes.

ID.—CHALLENGE TO PANEL—PANEL OF PREVIOUS YEAR.—It is not a ground of challenge to the panel taken in January from the box

of the previous year when the new list had not yet been placed in the jury-box. The fact that the old panel served longer than the law requires does not affect the regularity of their drawing or return.

ID.—EXAMINATION OF JUROR—IMPARTIALITY AND FITNESS—CONFLICTING STATEMENTS.—The ruling of the trial judge who heard the examination of a juror will not be disturbed where it simply presents a case of conflicting statements from which different minds might draw different conclusions as to the juror's impartiality and fitness.

ID.—EVIDENCE OF PROSECUTION FOR BIGAMY—EXCLUSION OF OFFER.—Offered evidence that the grand jury that indicted the defendant for perjury in the former prosecution had previously indicted him for bigamy, and that both charges involved the fact that defendant married Charlotta E. Newman on the day specified, for the purpose of showing that the court had no jurisdiction of the former perjury charge, was properly excluded.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Albert G. Burnett, Judge presiding.

The facts are stated in the opinion of the court.

George D. Collins, Appellant, *in pro. per.*

U. S. Webb, Attorney General, for Respondent.

HALL, J.—The defendant was charged by indictment with the crime of perjury, and upon trial was convicted. He moved for a new trial, but his motion was denied, and judgment pronounced. He thereupon appealed to this court from the order denying his motion for a new trial and from the judgment. As all the matters that could be urged for a reversal of the order denying the motion for a new trial, upon the record before us are equally available to the defendant on the appeal from the judgment, the arguments have been directed especially to the appeal from the judgment.

The transcript as originally filed in this court contained no demurrer to the indictment, but subsequently, on suggestion of diminution of the record, appellant was allowed to file in this court a certified copy of such demurrer, subject to the objection of respondent that this court could not consider the same, for the reason that there is no exception presented by bill of exceptions to the ruling of the court thereon. In-

asmuch, however, as we think that the action of the court in overruling the demurrer should be sustained, we have not deemed it necessary to pass upon the question of practice involved in the objection of respondent, but have preferred to pass upon the questions presented by the demurrer.

The demurrer is both general and special, and much the greater portion of defendant's brief is devoted to a discussion of the points raised by his demurrer. The principal objections to the indictment grow out of the contention that the indictment contains no sufficient assignment of perjury, and it is this contention we shall first consider.

The indictment is quite lengthy, occupying about eighteen folios of closely printed matter in the transcript, and we do not deem it necessary to set it forth in full. After setting forth the various formal matters and matters of inducement and the pendency of an action in a competent court, and the administration of the oath and the like, it is charged "that the said George D. Collins . . . did then and there . . . willfully, unlawfully, corruptly, falsely and feloniously, and contrary to the said oath by him, the said George D. Collins, then and there taken, testify and swear, and state the truth to be in substance as follows, and did then and there state as true the following matters and things, to wit: That on the fifteenth day of May, 1889, at a church then situate on Eddy street between Octavia and Laguna streets in the city and county of San Francisco, a marriage ceremony was performed between the said George D. Collins and one Agnes Newman, by a clergyman named Rev. M. D. Connolly, and that at said time and place, by said Rev. M. D. Connolly, said ceremony was performed in the presence of Thomas E. Curran and Charlotta E. Newman, and that then and there, in the presence of said parties, the said marriage ceremony was performed as follows, to wit:" (here follows a statement of testimony giving details of a marriage ceremony between said Collins and Agnes Newman). Further on the indictment proceeds as follows: "That the said testimony then and there given by the said George D. Collins was false and untrue, and was known by the said George D. Collins to be false and untrue at the time the same was given as aforesaid, and the same was so given by the said George D. Collins willfully and knowingly. That on the said fifteenth day of May, 1889, at a church then situated on Eddy street between

Octavia and Laguna streets in the city and county of San Francisco, a marriage ceremony was not performed between the said George D. Collins and one Agnes Newman by a clergy-man named Rev. M. D. Connolly, or by any other person; that at said time and place, neither by said Rev. M. D. Connolly, nor by any other person, was said ceremony so testified to performed in the presence of Thomas E. Curran and Charlotta E. Newman——'' (and here follows a negation of the testimony of the details of said ceremony). Then follows this allegation, to wit: ''That the truth and the facts were that on the fifteenth day of May, 1889, at a church situated on Eddy street between Octavia and Laguna streets in the city and county of San Francisco, a marriage ceremony was performed between said George D. Collins and one Charlotta E. Newman by the said Reverend M. D. Connolly, and that at said time and place [here follows a statement of the details of a marriage ceremony between George D. Collins and Charlotta E. Newman similar in all respects to the details of the ceremony set forth in the said testimony of defendant, save that Charlotta E. Newman is substituted in place of Agnes Newman] . . . all of which the said George D. Collins well knew at the time he so testified, as aforesaid; and, so knowing, the said George D. Collins did then and there willfully, unlawfully, falsely, knowingly, and contrary to his said oath, and knowing his said testimony to be false, testify as hereinbefore specifically set forth, and he, the said George D. Collins, did then and there and thereby swear falsely and feloniously commit willful perjury. . . .''

The objections to this indictment, based on the contention that it does not contain a sufficient assignment of perjury, seem to be fully answered by *People* v. *Ennis,* 137 Cal. 263, [70 Pac. 84]. The scope of the demurrer attacking the indictment in the Ennis case does not clearly appear from the report of the case, but we have before us a copy of the demurrer as well as of the indictment in that case, from which it appears that the demurrer was both general and special, and attacked the indictment much the same as does the demurrer in the case now before us. While the indictment in the Ennis case does not contain as long a statement of perjurous matter as is contained in the indictment in the case at bar, it does set forth at least two distinct statements. It is alleged that Ennis testified ''That he, the said Arthur

Ennis, was not at any time on the eighth day of January, 1901, or on the ninth day of January, 1901, down to Sargent's Corral in said San Joaquin county with anybody, and that he, the said Arthur Ennis, never had assisted anybody in removing a hog from Sargent's Corral in said San Joaquin county.''

It thus appears that two statements were alleged to have been made by Ennis. In discussing the objection made to the indictment in the Ennis case, that it was not sufficiently alleged that Ennis testified falsely, the court said: ''There was a sufficient averment that appellant testified falsely. The averment in the first part of the indictment that he did 'willfully, unlawfully feloniously and contrary to said oath' make certain statements, seems to be all that is required by section 118 as to the falsity of the statements; the language of said section simply being 'willfully and contrary to such oath'; but in a subsequent part of the indictment, after an enumeration of the said statements, it is averred that 'said statements so made, as aforesaid, by said defendant, were then and there and are false and untrue, and were, at the time of the making thereof by the said defendant, Arthur Ennis, known by the said defendant to be false and untrue.' The language just quoted really makes it unnecessary to discuss the sufficiency of the other averments of the falsity of the statements, and appellant's knowledge thereof, which are asserted to be insufficient because each is preceded by the word 'whereas,' the contention being that what follows is mere recital.''

It is thus seen that in the Ennis case the court strongly intimated that, in averring the falsity of the testimony, it is sufficient to allege that it was given falsely and contrary to such oath, and it is distinctly held that it is sufficient to aver that the statements so made then and there were and are false and untrue.

The indictment in the case at bar contains the averment that ''the said George D. Collins . . . did then and there . . . willfully, unlawfully, corruptly, falsely and feloniously and contrary to said oath . . . state as true the following matters and things, to wit''; and after setting forth his testimony it is averred ''that the said testimony then and there given by the said George D. Collins was false and untrue, and was known by the said George D. Collins to be false and untrue at the time the same was so given, as aforesaid.'' In other

6 Cal. App.—32

words, the indictment now under consideration follows the form of the indictment in the Ennis case in the particulars now being discussed.

It is, however, urged by appellant that the general statement that the testimony set forth is and was false and untrue is followed by a particular negation of the testimony set forth containing a negative pregnant; that the averment of the indictment "That on the said fifteenth day of May, 1889, at a church then situate on Eddy street between Octavia and Laguna streets in the city and county of San Francisco, a marriage ceremony was not performed between the said George D. Collins and one Agnes Newman by a clergyman named Reverend M. D. Connolly, or by any other person, etc., etc.," is a negative only that such marriage ceremony took place at said time and place. But conceding this to be so, we do not see that this affects the sufficiency of the indictment. This is not a case of the denial of allegations of substantive facts where such a denial would be a negative pregnant, and would therefore admit the substance of the allegation, and the time and place would be immaterial. There is no allegation of the substantive fact that a marriage ceremony was performed between Collins and Agnes Newman at a certain time and place, but an allegation that he so testified—followed by an averment that such testimony was false and untrue, and that no such ceremony took place between the said Collins and Agnes Newman at such time and place.

If it be conceded that this is not a denial that such marriage may have taken place at some other time or place, it certainly is a denial of the truth of the testimony alleged to have been given by Mr. Collins. It is a denial of the truth of the testimony that such marriage took place at *said time and place.*

Testimony as to the time and place may be, and often is, material. By way of illustration, let us assume that an action was pending wherein Charlotta E. Collins (nee Newman) sought a divorce from George D. Collins, and alleged that she and he intermarried on the fifteenth day of May, 1889, and that by his answer he denied the same in due form. That, at the trial, she, to prove the marriage, introduced evidence to the effect that on the fifteenth day of May, 1889, at a certain church, by a certain priest, a marriage ceremony was performed between herself and George D. Collins. That

thereupon he should testify that at the time and place, and
by the priest mentioned by her, and with all the other at-
tendant circumstances testified by her, a marriage ceremony
was performed between himself and *Agnes Newman.* It is
quite plain that such testimony would be material in its
entirety, and that his testimony as to the time and place
would be especially material and vital, for, if accepted as the
truth, it would contradict her testimony and defeat her
cause of action.

Furthermore, in determining the meaning of this indict-
ment, the entire indictment must be read and considered.
From the reading of the entire indictment we think that a
person of common understanding would know that the gist
of the charge against defendant was that he falsely and
knowingly testified that a certain marriage ceremony, which
in truth was actually performed between himself and *Charlotta
E. Newman,* was performed between himself and *Agnes New-
man.* It is not only averred that he falsely and contrary to
his oath testified that, at a certain time and place, a certain
marriage ceremony was performed by a certain minister, be-
tween himself and Agnes Newman, etc., but it is averred that
said testimony was false and untrue, and this is followed by
a negation of his testimony in the manner and form as given.
It is then immediately averred: ''That the truth and the
facts were'' that at the time and place and by the minister
specified in the testimony of defendant a marriage ceremony
with the same attendant circumstances was performed be-
tween the said Collins and *Charlotta E. Newman,* concluding
with the averment ''all of which the said George D. Collins
well knew at the time he so testified, as aforesaid; and so know-
ing, the said George D. Collins did then and there willfully,
falsely, knowingly and contrary to his said oath, and knowing
his said testimony to be false, testify as hereinbefore specifi-
cally set forth.'' Reading these statements in their proper re-
lation to one another it is apparent to the common under-
standing that the narration of the fact concerning the cere-
mony between the defendant and Charlotta E. Newman was
intended to be a statement of the truth, as contradistinguished
from the testimony alleged to have been given by said Col-
lins. In other words, the gist of the charge is that defendant
falsely testified that a certain marriage ceremony, that in

truth was performed between defendant and *Charlotta E. Newman,* was performed between him and *Agnes Newman.*

It is next urged that it affirmatively appears that the testimony alleged to have been given was immaterial.

The indictment contains the averment "That the said testimony then and there given by the said George D. Collins was material to the said action and the said trial hereinbefore described, and material to the issues of the said action and trial, and was material to the issues tendered in said cause, and in so testifying as aforesaid the said George D. Collins testified in a matter material to the said trial and said action and the issues therein."

Such averment is sufficient, unless it affirmatively appears from the other averments that it was immaterial. (*People v. Ennis,* 137 Cal. 263, [70 Pac. 84]; *People v. Rodley,* 131 Cal. 250, [63 Pac. 351]; *People v. De Carlo,* 124 Cal. 462, [57 Pac. 383]; *People v. Brilliant,* 58 Cal. 214; *People v. Ah Bean,* 77 Cal. 12, [18 Pac. 815].) In no aspect of the indictment does it affirmatively appear that the testimony charged to have been given was immaterial.

"If the matter falsely sworn to be circumstantially material or tends to support and give credit to the witness in respect to the main facts, it is perjury. And it is equally perjury if the false evidence tends to discredit the witness." (*People v. Barry,* 63 Cal. 62.)

"The materiality of alleged false testimony does not always appear upon its face, or when simply compared with the indictment; it may be material on account of certain other testimony which had been previously introduced on the trial of a cause." (*People v. Lem You,* 97 Cal. 224, [32 Pac. 11].)

But we have already practically disposed of this contention by what we have said upon the question of the assignment of perjury.

It is claimed that it does not appear that the officer who administered the oath had authority to do so.

It appears from the indictment that a certain designated action was on trial before the superior court of the city and county of San Francisco, which said court had jurisdiction to try and determine, and that said George D. Collins upon said trial in said court, offered himself as a witness in his own behalf, and duly appeared, and was called as a witness therein in his own behalf; "that then and there one J. B.

Martin was a duly appointed, qualified and acting deputy county clerk of the said city and county of San Francisco, state of California, and an officer authorized by law to administer oaths, and then and there duly authorized and empowered by law to administer an oath to said George D. Collins; and the said J. B. Martin did then and there . . . in the said trial and action . . . administer an oath to said George D. Collins in due form of law . . . and the said oath so administered and so taken was that he, the said George D. Collins, would testify to the truth, the whole truth and nothing but the truth on said trial and said action; that the said J. B. Martin then and there had power, authority and jurisdiction to administer said oath.'' This, we think, fully complies with the law. (Pen. Code, sec. 966.)

A deputy county clerk is *ex officio* a clerk of the superior court, and as such has power upon the trial of an action in such court to administer oaths to witnesses upon such trial. (Code Civ. Proc., sec. 2093.)

From this indictment it clearly appears that defendant was a witness upon the trial of the action before the court, and was then and there sworn to give true testimony on said trial, by one who, it is alleged, had authority to administer such oath, and who, under the law, had such authority under the circumstances disclosed by the indictment. The indictment in this respect is quite sufficient. (*State* v. *Shupe,* 16 Iowa, 36, [85 Am. Dec. 490] ; *State* v. *Townley,* 67 Ohio St. 21, [93 Am. St. Rep. 636, 65 N. E. 149] ; *State* v. *Maxwell,* 28 La. Ann. 361; *Masterson* v. *State,* 144 Ind. 240, [43 N. E. 138].)

The case of *People* v. *Cohen,* 118 Cal. 79, [50 Pac. 20], is not in point. In that case the proceeding in which the alleged perjury was committed was before a superior judge, sitting as a committing magistrate, and what is there said concerning the administration of an oath by a deputy county clerk has no reference to a case where such clerk administers an oath to a witness in a trial before a superior court.

The form of the oath set forth in the indictment is not precisely the same as that given in the statute (Code Civ. Proc., sec. 2094), and this is criticised by appellant. But the oath set forth is in substance the same as that specified in the statute, and besides, ''It is no defense to a prosecution for perjury that an oath was administered or taken in an irregular

manner." (Pen. Code, sec. 121; *People* v. *Parent,* 139 Cal. 602, [73 Pac. 423]; *Ex parte Carpenter,* 64 Cal. 271, [30 Pac. 816].)

It is also objected that the substance of the controversy in the case in which the alleged perjury occurred is not given. But the allegation in this regard is precisely like that which was held sufficient in *People* v. *Ah Bean,* 77 Cal. 13, [18 Pac. 815].

Some other minor criticisms and objections are urged to the form of the indictment, but we find no merit in any of them. As was said in *People* v. *Ennis:* "By the indictment in the case at bar the appellant was fully informed of the charge against him, and none of the alleged defects of the indictment tended to his prejudice as to any of the substantial rights; and the case is one to which the provision of section 1258 of the Penal Code peculiarly applies."

We think that the demurrer was properly overruled.

Appellant urges that the verdict is not supported by the evidence.

In support of this contention it is said that the record shows that in the case in which it is alleged the perjury was committed defendant did not testify that a marriage ceremony was performed between himself and Agnes Newman on the fifteenth day of May, 1899, but that he repeatedly stated that he could not fix the day of the month. But even if this be so, we do not think the evidence fails to support the charge made by the indictment. As we have before said in discussing the demurrer, the indictment when read as a whole clearly shows that the gist of the charge is that defendant falsely and contrary to his oath testified that a ceremony, which was in fact performed between himself and Charlotta E. Newman, was performed between himself and Agnes Newman. There is evidence in the record sufficient to show that on the fifteenth day of May, 1889, a marriage ceremony was performed as set forth in the indictment, between defendant Collins and Charlotta E. Newman, by the Rev. M. D. Connolly, at a church situated on Eddy street between Octavia and Laguna streets in the city and county of San Francisco, in the presence of Thomas E. Curran and Agnes Newman, and that no marriage ceremony was ever performed between defendant and Agnes Newman. The evidence clearly shows that the testimony that defendant gave in the action in which

it is alleged the perjury was committed (which we shall hereafter designate as action No. 16,130) was of and concerning this same ceremony, and a careful reading of the evidence, as to what he did testify to in action No. 16,130, shows that he testified in all respects as set forth in the indictment, save that he did not in words say that the ceremony took place on the fifteenth day of May, 1889, but in words said that he could not fix the day of the month. This we think fully sustains the indictment in the respect now under consideration.

Further, while he did say in words that he could not fix the day of the month, he did testify in action No. 16,130 that the marriage ceremony took place on the day following the day of the issuance of his marriage license, and identified this license as being marked in said action as ''People's Exhibit O in evidence.'' This same license bears date May 14, 1889. It thus appears that defendant in action No. 16,130 in effect testified that the ceremony took place on May 15, 1889.

Defendant also makes the point that the evidence does not show the perjurous testimony to have been material in action No. 16,130.

The record shows that action No. 16,130 was an action by the People of the State of California against the said defendant George D. Collins, for perjury alleged to have been committed in an answer sworn to and filed by the said George D. Collins, in an action brought by Charlotta Eugenie Collins against him for the support of herself and the minor children of herself and defendant. It is alleged in this indictment, which is in evidence in this case, that defendant, in his said answer, and on his oath, did falsely swear, among other things, that the said Charlotta Eugenie Collins and the said George D. Collins did not, on the fifteenth day of May, 1889, or at any other time, intermarry. It is further averred in said indictment, among other things, that said Charlotta Eugenie Collins and the said George D. Collins did intermarry on the fifteenth day of May, 1889. To this indictment defendant pleaded not guilty. It thus appears that in action No. 16,130 a distinct issue was presented as to whether or not Charlotta Eugenie Collins and defendant George D. Collins intermarried on the fifteenth day of May, 1889.

The record in this case shows Charlotta Eugenie Collins and Charlotta E. Newman to be one and the same person.

From this indictment alone and the plea of not guilty thereto it is apparent that any evidence to the effect that a marriage ceremony was performed on the fifteenth day of May, 1899, between Charlotta E. Collins (nee Newman) and the defendant would be material. It is equally true that evidence tending to show that no such ceremony took place would be equally material.

The record in this case shows that upon the trial of action No. 16,130 the People introduced testimony and rested, and that thereupon witnesses were examined on behalf of defendant, and that he himself testified. The record does not show fully the condition of the evidence at the time the defendant gave the testimony set forth in the indictment in this case, but it does show that the People had introduced in evidence in case No. 16,130 a license for the marriage of George D. Collins and Charlotta Eugenie Newman, and a certificate of marriage bearing the signature of the Rev. M. D. Connolly, to the effect that on the fifteenth day of May, 1889, he united in marriage George D. Collins and Charlotta E. Newman. This appears in that part of defendant's testimony in action No. 16,130 which was introduced by himself in this action.

It thus appears that not only did the indictment in action No. 16,130 allege that defendant and Charlotta Eugenie Collins (Newman) intermarried on the fifteenth day of May, 1889, but the People had introduced evidence directly tending to prove such allegation before defendant gave the testimony that the marriage ceremony, about which the People had given such evidence, was performed between himself and Agnes Newman. The testimony of defendant concerning the performance of the marriage ceremony between himself and Agnes Newman tended to disprove the averment of the indictment that on the fifteenth day of May, 1889, he and Charlotta Eugenie Collins (Newman) intermarried, and to contradict the evidence contained in the license and certificate supporting the averment of the indictment.

We think the evidence fully supports the verdict and every material averment of the indictment.

Appellant complains of the action of the court in refusing to admit evidence offered by defendant, that in action No.

16,130 he testified, in connection with the testimony that he gave of the marriage ceremony between himself and Agnes, that he had previously been married to her by a contract marriage, and the ceremony was only performed out of deference to the religious scruples of Agnes; his argument being that the ceremony was of no legal effect, and therefore testimony in regard thereto could not be material upon the question of marriage. His argument upon this question, though ingenious, is utterly specious. What we have already said about the materiality of the alleged perjurous testimony practically covers this question. A distinct issue was presented in action No. 16,130 as to whether or not defendant and Charlotta Eugenie Newman intermarried on the fifteenth day of May, 1899. The usual way of intermarrying is by a marriage ceremony. Evidence had been given tending to prove a marriage ceremony between defendant and said Charlotta. His testimony that that ceremony was between himself and Agnes tended to prove that no marriage ceremony had been performed between himself and Charlotta, and that no marriage had taken place between them. The materiality of such testimony could not be affected by the fact that such ceremony did not effectuate a marriage between defendant and Agnes. If his testimony that the ceremony was performed between himself and Agnes was true, there was no ceremony or marriage between himself and Charlotta, whether or not there had ever been any prior marriage to Agnes.

The learned judge who presided at the trial in the lower court properly refused to allow the offered testimony.

The court did not err in overruling defendant's challenge to the panel.

The panel in attendance upon the court at the calling of this case for trial had been drawn from the list prepared for the year 1905. The transcript shows that the trial jurors for 1905 were "duly and regularly selected by the said judges of the superior court, and their names duly, regularly and legally deposited in the trial jury box on the fourteenth day of February, 1905." This is conclusive as to the regularity of the original selection of the trial jurors for 1905.

It appears that the panel in attendance upon the court had been, under the order of said court, drawn from the trial jury box for 1905, and was on the eighth day of January regularly returned and impaneled by said court for the trial

of causes therein. Thereafter, a list of trial jurors for the year 1906 was selected and prepared by the judges of the superior court, and said list filed in the county clerk's office on said twenty-first day of January, 1906. This action came on for trial February 9, 1906. At this time the names of jurors selected for the year 1906 had not been placed in the jury-box, and no panel had been drawn from such list of names selected for 1906.

Defendant, as a further ground of challenge to the panel, objected that the panel for the year 1905 expired by limitation of law upon the listing of the trial jurors for the year 1906. But a challenge to the panel ''can be founded only on a material departure from the forms in respect to the drawing and return of the jury in civil actions. . . .'' This panel had been regularly and properly drawn and returned from the names constituting the trial jury list when they were drawn and returned. The purpose of the law, in allowing a challenge to the panel, is to protect the defendant against any improper selection of the panel of jurors from which a jury may be selected to try his case, and not to protect the jurors from too long attendance upon court. The ground of challenge refers to the drawing and return of the panel. The panel is drawn and returned when the names are drawn from the jury-box, and they are summoned, and return thereof made by the proper officer. That they serve longer than the law requires does not affect the regularity of their drawing or return.

We cannot disturb the ruling of the trial judge who heard the examination of the juror Dooley. It simply presents a case of conflicting statements, from which different minds might draw different conclusions as to the juoror's impartiality and fitness to serve as a juror. (*People* v. *Scott,* 123 Cal. 435, [56 Pac. 102].)

Defendant at the trial offered to prove that the grand jury that indicted him in action No. 16,130 had previously indicted him for bigamy, and that both charges involved the fact that defendant married Charlotta E. Newman on the fifteenth day of May, 1889, his contention being that under those circumstances the superior court had no jurisdiction to try cause No. 16,130 and that therefore no perjury could be committed upon the trial thereof. The statement of the con-

tention is its own refutation.   The court properly sustained the objection to the offered testimony.

Other points are raised by appellant concerning the rulings of the court in rejecting and admitting testimony.   We have examined the various questions thus presented, and find no prejudicial error in any such rulings.

The questions raised by the defendant as to the instructions are in effect the same as he has raised in regard to the indictment and the sufficiency of the evidence to support the verdict.   What we have said upon these questions covers the questions raised by the instructions.

We find no prejudicial error in the record, and the judgment and order are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 30, 1907, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 29, 1907.