COLLINS *v.* JOHNSTON, WARDEN OF THE CALIFORNIA STATE PRISON.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 594. Argued February 25, 1915.—Decided May 17, 1915.

In *habeas corpus* proceedings this court is confined to the examination of fundamental and jurisdictional questions; the writ cannot be employed as a substitute for a writ of error.

Refusal of the trial court to permit a proffered defense, even if erroneous, does not ordinarily affect the jurisdiction or amount to more than error.

An averment of arbitrary action in judicial ruling merely states a conclusion of law and has no effect in the absence of facts alleged sufficient to show that the ruling was actually arbitrary.

Even though the question whether the judgment was rendered by a properly constituted court were open here, this court sees no reason to disagree with the meaning attributed by the state courts of Cal-

ifornia to Art. VI, §§ 6 and 8 of the constitution of that State in regard to a judge of the Superior Court of one county holding a court in another county on the request of the governor of the State.

An amendment of the constitution giving authority where it existed before may be adopted from abundant caution and not as recognizing and supplying a *casus omissus.*

A sentence of fourteen years imprisonment for one duly convicted of perjury does not amount to a deprivation of liberty without due process of law where it does not exceed the limit authorized by the statute.

Comparative gravity of criminal offenses is a matter for the State itself to determine, and the fact that some offenses are punished with less severity than others does not amount to a denial of equal protection of the law.

The prohibition in the Eighth Amendment of cruel and unusual punishments is a limitation upon the Federal Government and not on the States.

A person extradited from Great Britain is not protected by § 5275, Rev. Stat., from being tried and convicted for a crime committed in the State after extradition—and so *held* in this case as to perjury committed on the trial of the crime for which the party was extradited.

THE facts, which involve questions raised under the Eighth and Fourteenth Amendments, and under an extradition treaty, as to the validity of the conviction and sentence of appellant in a criminal court of California, are stated in the opinion.

*Mr. George D. Collins pro se,* submitted.

*Mr. Raymond Benjamin,* Chief Deputy Attorney General of the State of California, with whom *Mr. Robert W. Harrison,* Deputy Attorney General of the State of California, and *Mr. U. S. Webb,* Attorney General for the State of California, were on the brief for the appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is an appeal, taken under § 238, Jud. Code, to review a final order of the District Court of the United

States for the Northern District of California denying appellant's petition for a writ of *habeas corpus* to be addressed to appellee, as warden of the State Prison of the State of California, in whose custody appellant alleges he is held in violation of the Constitution, laws, and treaties of the United States. The petition was based upon § 753, Rev. Stat., and was denied under § 755 upon the ground that, on the face of it, the petitioner was not entitled to the writ.

Appellant is held under the authority of a judgment of the Superior Court in and for the City and County of San Francisco, in the State of California, imposing a sentence of imprisonment for the term of fourteen years, upon his conviction for perjury upon an indictment presented December 29, 1905. The allegations of fact upon which the Federal questions are raised are somewhat involved, and not easily understood without reference to previous proceedings set forth in *Collins* v. *O'Neil*, 214 U. S. 113, of which appellant asks us to take judicial notice. Reading the averments of the petition with this aid, the following facts appear: On July 13, 1905, appellant was indicted by the grand jury of the City and County of San Francisco for the crime of perjury, committed in the giving of testimony in an action pending in a court of that county wherein one Charlotta Collins was plaintiff and appellant was defendant, in which she sought to obtain maintenance, support, and alimony for herself and her child; the alleged false testimony being that the said Charlotta and appellant did not intermarry on May 15, 1889, or at any other time, and were never husband and wife. To answer this indictment appellant was extradited from Canada, and he was put upon trial in the month of December before the Superior Court of the City and County of San Francisco. The jury disagreed, and while appellant was in custody awaiting a further trial he was, on December 29, 1905, again indicted for perjury, the offense being alleged to

have been committed in the giving of evidence upon the trial of the first indictment, in that he falsely testified that on May 15, 1889, at a specified place in the City of San Francisco, a marriage ceremony was performed between him and one Agnes Newman, whereas in truth, at the time and place specified, a marriage ceremony was performed between him and one Charlotta Newman. Before being placed on trial upon the second indictment, appellant applied to the United States Circuit Court for the Northern District of California for a writ of *habeas corpus*, which was denied. 148 Fed. Rep. 573. He was then tried, found guilty, and sentenced; the judgment was affirmed by the District Court of Appeal, and a petition to have the cause heard in the Supreme Court was denied. 6 Cal. App. 492; 92 Pac. Rep. 513. Meanwhile, successive applications for *habeas corpus* were made to the United States District and Circuit Courts for the Northern District of California, and denied. 151 Fed. Rep. 358; 154 Fed. Rep. 980. And the Supreme Court of California, having entertained such an application, overruled his contentions and remanded him to the custody of the Sheriff. 151 California, 340, 351. This court reviewed the decision of the state Supreme Court, and the decision of the United States Circuit Court reported in 154 Fed. Rep. 980, with the result that both were affirmed. 214 U. S. 113.

It is unnecessary to enlarge upon the doctrine, thoroughly established and recently re-stated, that in *habeas corpus* proceedings we are confined to the examination of fundamental and jurisdictional questions, and that the writ cannot be employed as a substitute for a writ of error. *Frank* v. *Mangum*, decided April 19, 1915, *ante*, p. 309.

In his petition and in voluminous briefs appellant raises numerous questions, of which it is sufficient to mention the following:

(1) He contends that he was deprived of due process of law in violation of the Fourteenth Amendment, in that the trial court arbitrarily denied and refused to consider a valid and legally conclusive defense offered by him upon the trial of the second indictment, which resulted in the conviction upon which he is now held in custody. The alleged defense was: that testimony relating to the question of fact whether a ceremonial marriage took place on May 15, 1889, between him and Charlotta Newman could not be material to the issue upon the first indictment nor furnish valid or competent foundation for a charge of perjury, because the marriage, if performed, was a nullity; and this because at a previous time appellant and Agnes Newman intermarried by written and mutual contract of marriage *per verba de præsenti*, followed by a consummation and a public and mutual assumption of marital rights, duties, and obligations, which marriage continued to exist until dissolved by the death of Agnes in the month of May, 1901, and because of this previous marriage any marriage ceremony between appellant and Charlotta on May 15, A. D. 1889, was void by § 61 of the Civil Code of California. But, plainly, the question whether testimony respecting the alleged ceremony was material upon the trial of the first indictment was to be determined by considering the nature of the issue that was then being tried, and the state of the other evidence that had been introduced at the time the alleged false testimony was given; not by reëxamining the merits of that issue or the truth of the other evidence. The principal questions at issue upon the former trial, so far as appears, were: (a) Did appellant enter into a ceremonial marriage with Charlotta on the date named? (b) Was he, at that time, already married to Agnes, then still living? These were questions of fact; if both were answered in the affirmative, the marriage with Charlotta although made in fact was void in law. In order for the prosecution to succeed, the

first must be answered in the affirmative, the second in the negative; hence, testimony bearing upon either was material. The alleged false testimony of appellant tended to prove the negative of the first question. Manifestly, when he was afterwards tried upon an indictment for perjury based upon that testimony, no legitimate light could be thrown upon the question of its materiality or of its falsity by re-trying the second question of fact or the legal conclusions resulting therefrom. This matter was sufficiently disposed of by the state Court of Appeal in *People* v. *Collins*, 6 Cal. App. 492, 498, 500, 505; 92 Pac. Rep. 513, 515, 516, 518.

Nor are we able to see that the refusal of the proffered defense, even were such refusal erroneous, could at all affect the jurisdiction of the court, or amount to more than an error committed in the exercise of jurisdiction. The averment that the defense was "arbitrarily refused" merely states a conclusion of law, and is of no effect in the absence of facts sufficient to show that the ruling was in truth arbitrary; and no such facts are alleged.

(2) A second contention is that the judgment under which appellant is held in custody is not the judgment of the Superior Court in and for the City and County of San Francisco, or of any legally constituted court of judicature, because Judge Burnett, who presided at the trial and rendered the judgment, was not a judge *de facto* or *de jure* of that court, but was a judge of the Superior Court for another county in said State, and presided at appellant's trial at the request of the Governor, and without the consent or stipulation of appellant or any request of the judges of the San Francisco Superior Court. This contention is to be tested by the state constitution, of which the pertinent provisions, as they stood at the time of appellant's conviction, are as follows:

"Art. VI, Sec. 6. There shall be in each of the organized

counties, or cities and counties, of the State, a superior court, for each of which at least one judge shall be elected by the qualified electors of the county, or city and county, at the general state election; *provided* . . . that in the city and county of San Francisco there shall be elected twelve judges of the superior court, any one or more of whom may hold court. There may be as many sessions of said court, at the same time, as there are judges thereof. . . . The judgments, orders, and proceedings of any session of the superior court held by any one or more of the judges of said courts, respectively, shall be equally effectual as if all the judges of said respective courts presided at such session. . . .

"Sec. 8. A judge of any superior court may hold a superior court in any county, at the request of a judge of the superior court thereof, and upon the request of the governor it shall be his duty so to do. . . . " .

Of course, these sections are to be read together, and their natural meaning is that where a judge of a superior court of one county holds a superior court in another county upon the request of the Governor, the court so held by him constitutes a session of the superior court, with the same jurisdiction as if one of the elected judges were sitting. *Gardner* v. *Jones*, 126 California, 614, 620, is to this effect. And when we add that Judge Burnett presided at appellant's trial upon the request of the Governor, that the District Court of Appeal affirmed the judgment and the Supreme Court refused to review its decision (6 Cal. App. 492, 507), and that the latter court, in the *habeas corpus* proceeding, upheld the jurisdiction of the trial court (151 California, 340), no reasonable doubt remains that the state courts advisedly adopted such a construction of § 8 as to sustain Judge Burnett's authority, even though appellant's present contention was not raised and therefore not distinctly passed upon. Assuming the question to be open here, we see no reason

to disagree with the meaning thus attributed to the constitution by the courts of the State.

According to appellant's construction of § 8, *supra,* a superior court judge elected in one county, when holding a superior court in another county upon the request of the Governor, would be without jurisdiction, and incapable even of holding a "session" of the court, because of the absence of express provision in the constitution to that effect. This is so plainly unreasonable that it might be dismissed as absurd, except for the insistence that by a constitutional amendment adopted November 8, 1910 (several years after appellant's conviction), the people themselves recognized a *casus omissus* in § 8 of Article VI, and supplied it by adding these clauses: "There may be as many sessions of a superior court at the same time as there are judges thereof, including any judge or judges acting upon request, or any judge or judges *pro tempore.* The judgments, orders, acts and proceedings of any session of any superior court held by one or more judges acting upon request, or judge or judges *pro tempore* shall be equally effective as if the judge or all the judges of such court presided at such session." But in view of the settled construction of the section as it previously stood, we must regard the amendment as having been adopted, from abundant caution, to remove all question of doubt, rather than as recognizing and supplying a *casus omissus.*

(3) It is contended that a sentence of fourteen years' imprisonment for the crime of perjury is grossly excessive, and therefore illegal, and prohibited by the Fourteenth Amendment of the Constitution of the United States. The sentence was based upon § 126 of the California Penal Code, which reads: "Perjury is punishable by imprisonment in the state prison not less than one nor more than fourteen years." This is not a case, therefore, of a sentence exceeding the limit authorized by law. *In re Snow,* 120 U. S. 274; *Hans Nielsen, Petitioner,* 131 U. S. 176.

To establish appropriate penalties for the commission of crime, and to confer upon judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within limits fixed by the law-making power, are functions peculiarly belonging to the several States; and there is nothing to support the contention that the sentence imposed in this case violates the provisions of the Fourteenth Amendment either in depriving appellant of his liberty without due process of law or in denying to him the equal protection of the laws. *In re Kemmler*, 136 U. S. 436, 448; *Coffey v. Harlan County*, 204 U. S. 659, 662.

The argument under the equal protection clause is based principally upon the averment that the false testimony to the effect that a ceremonial marriage between appellant and Charlotta Newman did not take place on May 15, 1889, "could not by any possibility induce or influence any order, judgment, or decree of any court or judge, nor any verdict or judicial proceedings, and did not and could not by any possibility injure or tend to injure any one in his or her rights or status in law." Since the petition shows that the natural tendency, and, presumably, the intended result, of the perjury was to improperly procure appellant's acquittal upon the first indictment, the present contention is so manifestly frivolous as not to require further discussion. It is argued, also, that in the case of other felonies denounced by the laws of California, "many of them offenses of greater gravity and of more injurious consequences than perjury, the average maximum penalty is five years' imprisonment in the penitentiary, and no more." But it is hardly necessary to say that the comparative gravity of criminal offenses, and whether their consequences are more or less injurious, are matters for the State itself to determine.

The Eighth Amendment is also invoked, with its prohibition of cruel and unusual punishments; but, as has been often pointed out, this is a limitation upon the Federal

Government, not upon the States. *Barron* v. *Mayor of Baltimore*, 7 Pet. 243, 247; *Pervear* v. *Commonwealth*, 5 Wall. 475, 480; *McElvaine* v. *Brush*, 142 U. S. 155, 158; *O'Neil* v. *Vermont*, 144 U. S. 323, 332; *Ensign* v. *Pennsylvania*, 227 U. S. 592, 597.

(4) It is contended, upon the authority of *United States* v. *Rauscher*, 119 U. S. 407, 430; *Cosgrove* v. *Winney*, 174 U. S. 64, and other cases, that the conviction and imprisonment of appellant under the second indictment are in contravention of the treaty of extradition between the United States and Great Britain, in that he was extradited for the sole purpose of being brought to trial upon the first indictment, and that while that charge was awaiting trial and final disposition, he could not, without violence to the treaty and § 5275 of the Revised Statutes, be tried, convicted, sentenced, and imprisoned upon another charge. It is alleged that the first indictment was dismissed upon motion of the prosecution on July 12, 1909; and that under the treaty and law he was entitled to a reasonable time thereafter in which to return to the country from which he was extradited. In this form, and in others too numerous for mention, appellant reiterates the points that were decided against him by the Supreme Court of California (*In re Collins*, 151 California, 340), whose judgment was affirmed by this court in *Collins* v. *O'Neil*, 214 U. S. 113, where the court said (p. 122): "The contention of the plaintiff in error that the duty to afford opportunity to return after a trial or other termination of the case upon which he was extradited is unaffected by any subsequent crime he may have committed, is not even plausible"; and further (p. 123): "The contention is also without merit that he has, at any rate, the right to a trial to a conclusion of the case for which he was extradited, before he can be tried for a crime subsequently committed. The matter lies within the jurisdiction of the State whose laws he has violated

since his extradition, and we cannot see that it is a matter of any interest to the surrendering government. There is nothing in § 5275, Rev. Stat., *supra*, which gives the least countenance to the claims of the plaintiff in error."

Appellant's other points and arguments are but variations of those that have been mentioned.

The final order of the District Court refusing the application for a writ of *habeas corpus* is

*Affirmed.*