William Francis RUPP, Appellant,

v.

Harley O. TEETS, as Warden of the California State Prison at San Quentin, California, Appellee.

No. 14861.

United States Court of Appeals
Ninth Circuit.

June 18, 1956.

Writ of Certiorari Denied Nov. 5, 1956.

A. J. Zirpoli, San Francisco, Cal., for appellant.

Edmund G. Brown, Atty. Gen., Clarence A. Linn, Asst. Atty. Gen., Arlo E. Smith, Deputy Atty. Gen., San Francisco, for appellee.

Before HEALY, POPE and FEE, Circuit Judges.

POPE, Circuit Judge.

The appellant Rupp is held by Warden Teets, the appellee, pursuant to a judgment and commitment of a California Superior Court imposing the death penalty by reason of Rupp's conviction of murder in the first degree. The killing was in an attempt to perpetrate rape.

After an unsuccessful appeal to the California Supreme Court, People v. Rupp, 41 Cal.2d 371, 260 P.2d 1, and a denial of certiorari by the United States Supreme Court, he filed a petition for writ of habeas corpus in the Supreme Court of California which was denied and his petition for writ of certiorari to review that denial was denied by the Supreme Court of the United States. He then filed in the court below the petition for writ of habeas corpus which we here review, a petition which alleges the same matters contained in the former petition for habeas corpus presented to the California court. The petition was denied by the court below, which issued a certificate of probable cause and this appeal followed.

The principal complaint in the petition is that upon his trial in the state court Rupp was denied the opportunity to present his defense that there was lacking one of the elements of the crime involved, namely, the specific intent to commit the crime charged against him. The allegation is: "He was denied the opportunity to present witnesses to show that he was mentally unable to formulate motive, intent, premeditation, deliberation, malice aforethought, the intent to commit rape, or other specific intent, proof of which was required under the charge against him and all of which constituted his sole defense thereto." He alleges that the purpose of the testimony which he sought to offer and which was rejected was not to determine his sanity or insanity but to determine whether or not he was capable of formulating the specific intent essential to the commission of the crime with which he was charged.

The petition lists the names of witnesses whom Rupp called and whose testimony he says was excluded. It is barren of any specification of what he sought to have those witnesses testify to, nor does he set forth the offers of proof the rejection of which he claims amounted to a denial of due process. He contented himself with filing with the court below a transcript of the lengthy trial in the state court, and left it to that court to wade through it in an effort to find out just what offers of proof the petitioner was talking about.

As did the trial court, we too have examined the record of the trial in the state court and we are unable to find any respect in which it can be said that the petitioner has been denied any right under the federal Constitution. In substance, his claim is that the California courts made too restricted an application of the rule stated in People v. Wells, 33 Cal.2d 330, 202 P.2d 53, concerning the admissibility of evidence to show or dis-

prove a specific mental state on a trial under a not guilty plea. We think that the action of the trial court in rejecting certain evidence offered by the petitioner at the time of his trial poses a question merely of state law, and that no question of due process is presented by the petition as supplemented by the record which has been made a part thereof.

■ As stated in Gryger v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683, "We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."[1] In Collins v. Johnston, 237 U.S. 502, 506, 35 S.Ct. 649, 651, 59 L.Ed. 1071, a defendant convicted in a California court, filed a petition for a writ of habeas corpus in the United States district court contending that he was deprived of due process of law, "in that the trial court arbitrarily denied and refused to consider a valid and legally conclusive defense offered by him upon the trial * * *." The court said, 237 U.S. at page 507, 35 S.Ct. at page 652: "Nor are we able to see that the refusal of the proffered defense, even were such refusal erroneous, could at all affect the jurisdiction of the court, or amount to more than an error committed in the exercise of jurisdiction."[1a]

Under the California statute, when a defendant pleads not guilty by reason of insanity, and also pleads not guilty, his trial proceeds in two stages. The statute, Penal Code § 1026, provides in part: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court." Rupp was tried in accordance with the provisions of that statute as he entered both such pleas. Following the first stage of his trial, at which the jury returned a verdict of guilty of murder in the first degree, without recommendation of clemency, the court proceeded to the second stage of the trial. No complaint is made with respect to the proceedings or rulings made at this second stage, at which petitioner and his counsel were permitted to offer and to introduce without any limitation a considerable amount of testimony relating to the life history of petitioner including the circumstances of his birth (at which it was suggested he may have received a head injury), his early severe illnesses, his childhood during which he manifested some backwardness in mental development, and his young manhood characterized by sundry acts of juvenile delinquency. At this second stage expert testimony was received with respect to the question of the petitioner's sanity or insanity at the time of the commission of the alleged offense.

1. Cf. Frank v. Mangum, 237 U.S. 309, 326–327, 35 S.Ct. 582, 587, 59 L.Ed. 969: "It is therefore conceded by counsel for appellant that, in the present case, we may not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings."

1a. Cf. "It is established constitutional doctrine that our limited function in correcting fundamental impropriety in state trials challenged under the due process clause makes it necessary that we leave alone many dubious occurrences in state procedure which we would proscribe if they should happen in a federal court." United States ex rel. Darcey v. Handy, 3 Cir., 224 F.2d 504, 508, affirmed 350 U.S. 872, 76 S.Ct. 115.

What petitioner here is complaining about is the fact that the trial court rejected some of the evidence along this line when it was offered at the first stage of the trial for the stated purpose of disproving the existence of a degree of malice and intent necessary to convict petitioner of the crime charged. In offering this evidence, petitioner relied upon the decision of the Supreme Court in People v. Wells, supra, as follows: "The fundamental rule above stated, with its qualification, is, therefore, as follows: As a general rule, on the not guilty plea, evidence, otherwise competent, tending to show that the defendant, who at this stage is conclusively presumed sane, either *did* or *did not*, in committing the overt act, possess the specific essential mental state, is admissible, but evidence tending to show legal sanity or legal insanity is not admissible." 202 P.2d page 66.[2]

The record shows that the trial court did undertake to rule upon the offers made in compliance with the rule of People v. Wells. It appears to have had clearly in mind the distinctions laid down in the Wells case and announced that it would rule accordingly.[3] The court ad-

mitted in evidence, as a part of the testimony of qualified experts, the records of two electro-encephalograph recordings of the petitioner's brain waves. These were received for the purpose of showing a below-average brain activity. The court permitted psychiatrists who had examined the petitioner to testify on the basis of their examination of the petitioner, of the electro-encephalograms, and of petitioner's life history as to their opinions as to whether the petitioner had sufficient mental capacity to be able to form the required malice and specific intent. Three such psychiatrists testified. Each had examined the petitioner personally. Two of them had been previously appointed by the court to make an examination of him (evidently for the purpose of ascertaining whether petitioner had sufficient mental ability to stand trial); two of them had examined the petitioner both before and after the commission of the offense for which he was tried. Counsel for petitioner was permitted to interrogate them with respect to their opinions concerning the petitioner's capacity to premeditate and to form malice and intent. Their answers did not in all respects agree, and in any event their opinions were not binding upon the jury.[4]

---

**2.** The court proceeded to elucidate its rule as follows: "Thus, if the proffered evidence tends to show not merely that he *did* or *did not*, but rather that because of legal insanity he *could* not, entertain the specific intent or other essential mental state, then that evidence is inadmissible under the not guilty plea and is admissible only on the trial on the plea of not guilty by reason of insanity. The standard by which the trial judge must appraise the admissibility of evidence in every case is, of course, the familiar 'right or wrong' standard hereinabove quoted, by which legal insanity as a defense is gauged. Evidence which tends to show legal insanity (likewise, sanity) is not admissible at the first stage of the trial because it is not pertinent to any issue then being litigated; but competent evidence, other than proof of sanity or insanity, which tends to show that a (then presumed) legally sane defendant either did or did not in fact possess the required specific intent or motive is admissible."

**3.** The record shows the following statement which was frequently repeated: "The Court: Of course as the Court has stated before, Mr. Meyer, the only testimony that you can produce at this time is to show by this expert, or any other expert that is put on the stand, as to whether the defendant was capable of forming motive, premeditation, wilfulness or malice. How, as to his mental condition where the line is so fine in that case that when you begin talking about mental condition you are talking about sanity or insanity, and that issue is not here."

**4.** One of these witnesses testified: "I do not feel that he had the capacity to premeditate. * * * At least not in the degree that an average individual would." This witness explained that an individual who has an impairment of his cortex lacks the inhibitions and volitional control which an average individual would have. Another of these witnesses when asked as to his opinion as to the capacity of petitioner "to formulate", "to premeditate",

But testimony along this line was received from all of them.

It is true that many objections were sustained to questions propounded to these witnesses, usually because questions appeared to call for answers relating only to the issue of sanity or insanity. On occasions the doctors insisted upon qualifying their answers to such a degree that they were not responsive, and those answers were stricken by the court. In the main, the offers which were excluded were medical reports which had been made relating to the mental condition and background of this petitioner, such as the written reports made by the medical witnesses prior to trial and in response to the court's requests for such reports, and reports made by officers of the Camarillo State Hospital to which petitioner had been committed as a juvenile observation case on a prior occasion. As these reports were made up of statements taken from the petitioner at the time of the various examinations made, relating to his attitudes upon the occasion of earlier acts of sex deviation, together with hearsay accounts of what transpired at the time of the commission of the offense for which petitioner was tried, it is obvious that this great unsorted mass of offered evidence was properly excluded by the trial judge. In view of the indiscriminate manner in which this improper material was sought to be injected in the trial, it is plain that the trial judge was obliged, in order to prevent the proceedings in the courtroom from becoming a shambles, to control the proceedings with a tight rein.

It is not our function to examine the record in an effort to discover whether the trial judge may have been too strict in sustaining objections to particular questions. It is sufficient to say that as we view it the record furnishes no indication that petitioner did not have a fair trial. Much less does it disclose that there was any fundamental unfairness, or any denial of constitutional right, anywhere in the course of the trial.

In respect to the matter about which the main complaint is now made, the record shows that the trial court, with due deference to the ruling in the Wells case, permitted the petitioner to show, as we have indicated, those matters which might tend to indicate lack of mental capacity to commit the crime of rape or attempted rape. In reviewing petitioner's appeal, the California Supreme Court pointed out that the issue here was not one of premeditation to commit murder in the ordinary sense, but the question was whether there was sufficient evidence to show the crime of perpetration or attempt to perpetrate rape. The court said: "All of the evidence received tended to show a killing in the perpetration of or attempt to perpetrate rape, which, if established, is murder in the first degree. Pen.Code, sec. 189; People v. Lindley, 26 Cal.2d 780, 791, 161 P.2d 227. Where a killing is shown to have been committed under such circumstances, a finding of premeditation and deliberation is unnecessary. * * * '(M)alice is shown by the nature of the attempted crime, and the law fixes upon the offender the intent which makes any killing in the perpetration of or attempt to perpetrate the (felony) * * * murder of the first degree.' * * * The controlling inquiry is whether Rupp had the mental state essential to the commission of rape or attempted rape." 260 P.2d 1, 5.

The remainder of petitioner's complaint concerns a statement made by the trial judge immediately following the

answer, "To a degree he was able to formulate, he definitely meditated to a degree what he was going to do, possibly not the killing but the act of intercourse * * * he definitely deliberated to a certain extent before he performed the act; his motive was to satisfy a sexual urge and curiosity, and a lot of other things. * * * He had the intent to intercourse, not to kill. * * *" The doctor added that: "I don't think the individual has the mental ability to know exactly what rape is in the eyes of the law."

return of the verdict of guilty at the end of the first stage of the trial. At the time the court said to the jury: "At this time, on behalf of counsel and the Court, I want to say to the jurors that we appreciate your patience with us and your strict attention to the testimony and the witnesses and the arguments and everything that went on during this trial. I want to say to you that I feel that your verdict is a good verdict." The argument seems to be that the court, after thus complimenting the jury upon its verdict on this phase of the case, should have exercised its discretion to require the trial of the second stage of the case before a different jury. As we understand the contention, it is that the failure so to do constituted a denial of due process.

■ The same contention that the court should have tried the issue of insanity before another jury, was made upon petitioner's appeal to the State Supreme Court which discussed the matter in its opinion, supra, and rejected the claim of error or abuse of discretion. Even if we had some power to review that ruling, we would find it impossible to see error in it since it must be assumed that the trial jury was adequately informed that during the second stage of the trial, where the issue of insanity was submitted to them, they were starting on a new inquiry. No reasonable person could possibly fail to note that an expression of approval of the first stage verdict was no indication as to what the court thought the verdict on the second stage should be. But the question of whether these remarks of the court were in any manner prejudicial was a question exclusively for the state court. We have nothing to do with it as the determination made by the California court cannot be held to be a denial of due process.

We are unable to perceive that any federal question is presented by the petition filed in the court below. The judgment is affirmed.