UNITED STATES v. BAUM.

(Circuit Court, D. Utah.   April 6, 1896.)

No. 10.

1. JURISDICTION OF FEDERAL COURTS — ADMISSION OF TERRITORIES — PENDING CAUSES — ADULTERY IN UTAH.

Adultery committed in Utah prior to its admission as a state, being a crime against the United States, a prosecution therefor pending in a territorial court at the time of admission was transferable, under the provisions of the enabling act (28 Stat. 111), and the schedule annexed to the state constitution (article 24, § 7), to the proper United States circuit court.

2. SAME — CONSTITUTIONAL LAW.

The government of the United States retains constitutional power to punish, through its courts, a crime committed against it in one of the territories, although such territory is admitted as a state pending the prosecution, and before conviction.

3. SAME—REPEAL OF STATUTE—PENDING PROSECUTIONS.
Even if the Edmunds-Tucker act, which defines and prescribes a punishment for adultery committed in the territories (24 Stat. 635, § 3), was impliedly repealed as to Utah by its admission as a state, the power to punish in pending cases was saved by the express language of section 17 of that act, and by the general provisions of Rev. St. § 13.

4. SAME—PLACES SUBJECT TO EXCLUSIVE FEDERAL JURISDICTION.
It seems that the Edmunds-Tucker act is still in force in the state of Utah, at any places therein over which the United States retains exclusive jurisdiction. U. S. v. Cornell, Fed. Cas. No. 14,867, 2 Mason, 60, followed.

This was an indictment against Peter M. Baum for adultery, alleged to have been committed in Utah Territory. The case was heard on motion to dismiss the prosecution.

J. W. Judd, U. S. Atty.

J. M. Tanner, for defendant.

MARSHALL, District Judge. The defendant asks that this action be dismissed, on the ground that the law under which he was indicted ceased to operate when Utah was admitted as a state, or, as stated in the motion, "was repealed by the admission of Utah to statehood," and that there is no law of the United States now in force in Utah making the act charged against him a crime, or authorizing its punishment. On November 21, 1895, the defendant was indicted in one of the district courts of the then territory of Utah for the crime of adultery, charged to have been committed on the 25th of September, 1895, in said territory, and within the jurisdiction of the court. To this indictment the defendant pleaded not guilty, and it was pending in such district court when Utah became a state. The crime of adultery was defined, and its punishment prescribed, in section 3 of the act of congress of March 3, 1887, commonly known as the "Edmunds-Tucker Act." 24 Stat. 635. It was by that act made a crime against the United States, not only in the territories, but in any other place over which the United States had exclusive jurisdiction. As the court in which this indictment was found has ceased to exist, it becomes important to consider how the process could survive the court in which it was initiated, and could be proceeded with in this court.

Section 17 of the Utah enabling act (28 Stat. 111) enacted:

"That the convention herein provided for shall have the power to provide, by ordinance, for the transfer of actions, cases, proceedings, and matters pending in the supreme or district courts of the territory of Utah at the time of the admission of the said state into the Union, to such courts as shall be established under the constitution to be thus formed, or to the circuit or district court of the United States for the district of Utah; and no indictment, action or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the state or United States courts according to the laws thereof, respectively."

Under this authority it was provided, in a schedule annexed to the constitution of Utah, that:

"All actions, causes, proceedings and matters which shall be pending in the district courts of the territory of Utah, at the time of the admission of the state into the Union, whereof the United States circuit or district courts might have had jurisdiction had there been a state government at the time

of the commencement thereof, respectively, shall be transferred to the proper United States circuit and district courts, respectively, and all files, records, indictments and proceedings relating thereto, shall be transferred to said United States courts." Const. Utah, art. 24, § 7.

That the circuit court would have had jurisdiction of the crime charged if Utah had been a state at the time of its commission, and it had been committed under the same circumstances,—that is, at any place within the state over which the United States had exclusive jurisdiction,—follows from the original grant of criminal jurisdiction to that court in the judiciary act of 1789, which has been re-enacted in the succeeding statutes defining its jurisdiction. This grant was of "exclusive cognizance of all crimes and offenses cognizable under the authority of the United States, except as otherwise provided by law, and concurrent jurisdiction with the district courts of the crimes and offenses cognizable by them." Rev. St. U. S. § 629; 25 Stat. c. 866, § 1.

This is not one of the causes that could have been proceeded with in a state court, because the offense was against the United States, and not against the state; and the courts of the former are given exclusive cognizance of all offenses against the national government. It is evident that when congress exercises its exclusive powers of legislation for the territories, it is not as a local legislature. The authority is conferred by the same instrument that is the source of its other powers; and, in the language of the supreme court of the United States in Cohens v. Virginia, 6 Wheat. 426, it is to be exercised "like all its other powers, in its high character as the legislature of the Union." It would seem, then, that the enabling act, and the ordinance adopted by its authority, have made this court the successor of the territorial court as to this case, and that process initiating in the latter court could be proceeded with here, provided there be any authority to now punish the defendant for the crime charged. But it is contended that the power to punish in this case has ceased, because Utah was admitted as a state on the same footing as the other states, and, as claimed, the United States is without constitutional power to make criminal the act charged in the indictment, if now committed in Utah; and hence it has lost the power to punish the defendant for it. If the act would not constitute a crime against the United States if now committed, it would not follow that the power to punish it was lost. There seems to be no objection, in principle, to punishing under a statute which makes an act criminal when committed within a particular time, although such punishment be not inflicted until the expiration of that time. Stevens v. Dimond, 6 N. H. 330; Bish. St. Crimes, § 182. It is true that no punishment can be inflicted for an act after the repeal, without a saving clause, of the law prohibiting it and prescribing its punishment; but this is because there would remain no law in existence authorizing the court to proceed. As stated in U. S. v. Tynen, 11 Wall. 95:

"By the repeal, the legislative will is expressed that no further proceedings be had under the act repealed. In Norris v. Crocker, 13 How. 429, the court said that, 'as the plaintiff's right to recover in that case depended entirely

upon the statute, its repeal deprived the court of jurisdiction of the subject.' As said by Mr. Justice Taney in another case, 'the repeal of the law imposing the penalty is, of itself, a remission.' "

This is as true of repeals by implication, as of other repeals, but it is not necessary that the act charged as criminal should continue to be prohibited. The crime is complete as of the date of the criminal act, and, unless there be a remission, by the repeal of the only law which authorizes its punishment, or by direct pardon, such punishment may be inflicted. This is shown by the admittedly valid statutes of the United States, and of most of the states, to the effect that such a repeal in criminal cases should not affect causes of prosecution already accrued. Rev. St. U. S. § 13. Wherever there is such general saving clause, or a similar special saving clause in the repealing act, the authority to punish is still preserved, and the intent, otherwise inferable, that the repeal should operate as a remission of past offenses, is negatived.

But it is said that congress had no constitutional power to save the right to punish this offense after Utah became a state, unless it had the power to make the act criminal if thereafter committed in Utah. No authority is cited in support of this claim, and I have been able to find none. It is predicated upon the theory that, in order to punish a crime against its laws, the United States must retain its sovereignty over the place where the crime was committed, in respect to the subject-matter of the crime. But the power to punish crime is independent of any territorial sovereignty over the place of its commission. The United States "has jurisdiction of all offenses which assail its rights, or the rights of its subjects, without regard to the place where the offender was at the time the offense was committed. The real theory of jurisdiction rests on the ground that the act or omission was against the sovereignty. The rule should be that we will punish all who offend against our sovereignty, if we can obtain control of the offender, without any regard to his nationality, or the place of the offense; and in this view alone rests true national protection." Brown, Jur. 224; 2 Whart. Cr. Law, § 1862; Ex parte Bollman, 4 Cranch, 75; U. S. v. Thompson, 1 Sumn. 168, Fed. Cas. No. 16,492.

Having the constitutional power to prohibit the act and prescribe a punishment, the United States retains the power to inflict such punishment, independent of the continued exercise of absolute, or, indeed, of limited, sovereignty over the place of the commission of the offense. The jurisdiction of consular courts of the United States rests on this principle. Having the power to prescribe the offense, congress had the power to authorize the punishment of the offender at such time or place as it might designate, within or without a state; so that, if it be admitted that the law under which this indictment was found has been repealed by implication, with respect to Utah, still the power to punish past offenses under it is saved both by the express language of section 13, Rev. St. U. S., and by the intent to save pending prosecutions shown in section 17 of the Utah enabling act. But is the law in question repealed? It was not enacted for Utah alone, but for all of the territories and other places

over which the United States had exclusive jurisdiction. The Utah enabling act could not affect this law outside of this state, nor did it, in terms, remove Utah from its operation. The argument is that statehood for Utah is so inconsistent with any operation of this law within the state as to repeal it by implication. The constitution provides that congress shall have power "to exerc: e exclusive legislation in all cases whatsoever * * * over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and all other needful buildings." Const. art. 1, § 8, subd. 17. Such places, when acquired, would be other places over which the United States has exclusive jurisdiction, and would fall within the field of operation of the Edmunds-Tucker act. The fact that Utah is a state is in no way inconsistent with the operation of the law in such places.

In United States v. Cornell, 2 Mason, 60, Fed. Cas. No. 14,867, this principle was applied to a murder committed in a fort in Newport Harbor, belonging to the federal government. The ground had been purchased with the consent of Rhode Island, and it was held that the state had no jurisdiction, and that the United States was the only power that could take cognizance of and punish the crime. So it would seem that there is still a legitimate field of operation in Utah for the statute in question. The act charged as a crime against the defendant, if now committed in the state of Utah, under the same circumstances as charged in the indictment, viz. if committed in any place in the state over which the United States has exclusive jurisdiction, would be a crime against the United States, and punishable as such.

The motion must be denied.