# SOUTHERN SURETY CO. v. STATE.

No. 2162.   Opinion Filed October 15, 1912.

(127 Pac. 409.)

1.  **APPEAL AND ERROR**—Assignments of Error—Necessity.   The
    Supreme Court will not review alleged errors of the trial court,
    unless the errors complained of are in some manner assigned for
    review by the petition in error.

2.  **CRIMINAL LAW** — Conflicting Jurisdiction—State and Federal
    Courts.   Adultery, being an offense arising out of the marriage
    relation, is cognizable only in the state courts, the power to
    legislate on that subject not being one delegated by the states
    to Congress or reserved by the Constitution to the federal gov-
    ernment, except in the territories, forts, arsenals, custom houses,
    or other places where the United States has exclusive jurisdiction,
    in which places Congress may pass laws defining the offense and
    prescribing the punishment.

3.  **SAME** — Territorial Courts — Transfer of Causes.   Prior to
    the admission of Oklahoma into the Union as a state, the
    crime of adultery in the Indian Territory was an offense against
    the federal statute, for that all of Indian Territory was under the
    immediate and exclusive jurisdiction of the United States, but
    by virtue of the provision of the Enabling Act (Act June 16,
    1906, c. 3335, 34 St. at L. 267) as amended by Act March 4, 1907, c.
    2911, 34 St. at L. 1286, all persons charged with the crime of adul-
    tery at the time of statehood and whose cases were then pending in
    the United States courts of the Indian Territory were thereafter
    properly prosecuted in the district courts of the state, unless the
    offense had been committed in some part of the Indian Territory
    over which the federal government retained exclusive jurisdic-
    tion, in which case it would be properly triable in the federal
    courts.

4.  **COURTS**—Territorial Courts—Admission as State—Right of Action
    on Forfeited Bond.   Under the provisions of 'the Enabling Act
    (Act June 16, 1906, c. 3335, 34 St. at L. 267), as amended by Act
    March 4, 1907, c. 2911, 34 St. at L. 1286, the state of Oklahoma be-
    came subrogated to all rights, powers, and privileges of the United
    States in all the cases that were properly transferred from the
    United States courts of the Indian Territory to the courts of the
    state of Oklahoma, and especially to the rights of the original
    obligee in criminal appearance bonds.

5.  **BAIL**—Criminal Prosecution—Right of Action on Forfeited Bond
    —Effect of Statehood.   A surety on a forfeited criminal appearance
    bond given in the Indian Territory prior to statehood will not
    be heard, in an action to recover on said bond on account of for-
    feiture taken, to object to the substitution of the state of Okla-

homa for the United States, the original obligee named in the said bond; said substitution being authorized by the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 St. at L. 267) as amended by Act March 4, 1907, c. 2911, 34 St. at L. 1286.

(Syllabus by Robertson, C.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by the State against the Southern Surety Company on a forfeited appearance bond. Judgment for the State, and defendant brings error. Affirmed.

*J. E. Whitehead,* for plaintiff in error.

*Chas. West,* Atty. Gen., for the State.

Opinion by ROBERTSON, C. In 1907, prior to statehood, J. B. Stout was held by a United States commissioner to await the action of the grand jury at the November, 1907, term of the United States Court for the Central District of the Indian Territory, sitting at McAlester, on two charges—one for introducing whisky into the Indian Territory, and the other for the crime of adultery. His bail was fixed at $750, and was furnished by the plaintiff in error. On January 8, 1908, he was indicted by the grand jury of Pittsburg county for the crime of adultery. At the March, 1908, term of the district court of Pittsburg county, he was called for arraignment, and failing to appear, a forfeiture on the bond was taken, and on January 23, 1909, defendant in error brought suit against Stout and the Surety Company to recover on the forfeited bond. No service being had on Stout, the trial proceeded against the Surety Company, and resulted in a judgment in favor of the state for the full amount sued for. The Surety Company appeals.

By its petition in error the Surety Company seeks the review of several rulings of the trial court; but inasmuch as the consideration of all but one of the assignments of error requires an examination of the evidence introduced at the trial, and no exception or objection to the overruling of the motion for a new trial is alleged or pleaded, and no error being assigned thereon in the petition in error, it will be unnecessary to give them fur-

ther attention, as this court cannot review alleged errors, unless the same are presented by the petition in error.

"The Supreme Court will not review alleged errors in the trial court, unless the error complained of is in some manner assigned for review by the petition in error." (*Lookabaugh v. Epperson,* 28 Okla. 472, 114 Pac. 738.)

"Where appellant fails to assign in his petition in error as error the overruling of a motion for a new trial, no question that seeks to have reviewed the errors alleged to have occurred during the progress of the trial in the court below is properly presented to the Supreme Court, and such cannot be reviewed." (*Meyer v. James,* 29 Okla. 7, 115 Pac 1016.)

The only error, therefore, arising on the record, which we are warranted in considering, is that one mentioned in the fourth assignment of error, viz.: "That the lower court erred in overruling the demurrer filed by the defendant below, to the original petition of plaintiff below." Four separate grounds of demurrer are urged by plaintiff in error, viz.:

"First. That this court had no jurisdiction to indict the defendant, J. B. Stout, for an offense committed prior to the admission of the state of Oklahoma into the Union. Second. That this court had no jurisdiction to forfeit said bond as alleged in plaintiff's petition. Third. That this court had no jurisdiction of this cause of action against this defendant, or the said J. B. Stout. Fourth. That the petition of the plaintiff does not state facts sufficient to constitute a cause of action against the defendant."

Plaintiff in error contends that the offense of adultery in the Indian Territory prior to statehood was cognizable only under the federal statutes, and an examination of the laws in force in the Indian Territory prior to the admission of Oklahoma into the Union discloses the fact that the laws of Arkansas which had been put in force in the Indian Territory made no provision for the punishment of the crime of adultery, but that such offense was prosecuted under and by virtue of the so-called "Edmunds-Tucker" Act (Act March 3, 1887, c. 397, 24 St. at L. 635 [U. S. Comp. St. 1901, p. 3635]), and the amendments thereto as passed by Congress, and approved March 3, 1887. The prosecution of Stout was begun and carried on under and by virtue of this federal statute. This being true, was the cause properly transferred

to the district court of Pittsburg county as the successor of the United States Court for the Central District of the Indian Territory?

Section 16 of the Enabling Act (Act June 16, 1906, c. 3335, 34 St. at L. 267), as amended by Congress, and approved March 4, 1907, (Act March 4, 1907, c. 2911, 34 St. at L. 1286), provides for the transfer of pending cases to the federal courts in the following language:

"Prosecutions for all crimes and offenses committed within the territory of Oklahoma, or in the Indian Territory, pending in the district courts of the territory of Oklahoma, or in the United States courts in the Indian Territory upon the admission of such territories as a state, which, had they been committed within a state, would have been cognizable in the federal courts, shall be transferred to and be proceeded with in the United States Circuit or District Court established by this act for the district in which the offenses were committed, in the same manner and with the same effect as if they had been committed within a state"

—while section 20 of the same act makes provision for the transfer of all other pending cases to the state courts, which succeeded the United States courts of the two territories. Under these statutes, it appears that this cause, which was pending in the United States court at the advent of statehood, was properly transferred to the district court of Pittsburg county. Congress undoubtedly had authority to enact laws for the government of the Indian Territory which would define and punish the crime of adultery. For this purpose the "Edmunds-Tucker" Act was sufficient, and it extended to all places where the United States had, or retained, exclusive jurisdiction, which, prior to statehood, included every place in the Indian Territory, and which, since statehood, still extends to forts, arsenals, custom houses, etc., if any such places there be in that part of the state. But unless there be some such place, where the United States retains and exercises exclusive jurisdiction, the above act does not apply, and prosecutions for its violation cannot be carried on in federal courts since statehood, for the reason that adultery, being an offense arising out of the marriage relation, is cognizable only in the state courts, the power to legislate on that subject being one not delegated to

Congress by the states, nor reserved by the Constitution of the United States to the federal government. The power of Congress to deal with this subject in the territories, and in those reservations, etc., in the various states where Congress has reserved exclusive jurisdiction, cannot be doubted. Congress might also have saved the right and jurisdiction to the federal courts to hear and determine all such cases as were pending at the time of the admission of Oklahoma and Indian Territory to statehood, but for reasons deemed sufficient did not do so, but by specific provision of statute (sections 16 and 20, Enabling Act) provided for the transfer of such cases to the district courts of the state, which would have had original jurisdiction of the subject-matter had there been a state in existence at the time the alleged crime was committed.

Counsel for the Surety Company strenuously insist that the rule laid down by Judge Marshall in *United States v. Baum* (C. C.) 74 Fed. 43, should govern in this case, and at first reading one might agree that such was the law in this case, but a careful investigation and examination of the law, and especially by comparing the controlling sections of the Enabling Acts of the two states, we can readily see that the right to prosecute such cases was reserved and saved to the federal courts in Utah, while in this state express provision was made for the surrender of jurisdiction, and for the transfer of such cases to the state courts. Had our Enabling Act failed, by express provision, to provide for the removal of such cases to the state courts, then, under the same reasoning as used by Judge Marshall, the federal courts might have retained jurisdiction of this particular case. Sections 16 and 20 of the Enabling Act provided that this case should be transferred to and disposed of by the district court of Pittsburg county, and the demurrer was properly overruled.

There is no merit to the further contention of plaintiff in error that the state of Oklahoma is not the proper party plaintiff in this action for the reason that the United States of America was the obligee named in the bond sued on. By the provisions of section 19 of the Enabling Act it was provided:

"That the courts of original jurisdiction of such state shall be deemed to be the successor of all courts of original jurisdiction

of said territories, and as such shall take and retain custody of all records, dockets, journals and files of such courts except in causes transferred therefrom as herein provided," etc.

So that by virtue of the foregoing the district court of Pittsburg county became vested with all the powers of the United States Court for the Central District of the Indian Territory so far as this case was concerned. Under the foregoing provisions of the Enabling Act, the state became and was subrogated to all the rights, powers, and privileges of the United States, the original obligee named in the bond; besides, in our opinion, the plaintiff in error is in no position to raise the question of the so-called legislative assignment of the obligation sued on, nor of the substitution of the state as obligee, instead of the United States of America. By virtue of the provisions of the Enabling Act, *supra*, the United States is the only party that could raise that objection.

This disposes of all questions properly raised by the petition in error, and, no error appearing of record sufficient to warrant a reversal, the judgment should be affirmed.

By the Court: It is so ordered.