**Wayne GOHAM, Appellee,**

v.

**Charles L. WOLFF, Jr., Warden, Nebraska Penal & Correctional Complex, Appellant.**

**Dennis TYNDALL, Appellee,**

v.

**Charles L. WOLFF, Jr., Warden, Nebraska Penal & Correctional Complex, Appellant.**

**Nos. 72–1365, 72–1366.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1972.

Decided Dec. 20, 1972.

Rehearings and Rehearings En Banc Denied Jan. 12, 1973.

---

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for appellant.

William G. Line, Fremont, Neb., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and DURFEE, United States Court of Claims Judge.

PER CURIAM.

This is an appeal from an order of the federal district court granting writs of habeas corpus to two state prisoners. Wayne Goham and Dennis Tyndall, both members of the Omaha Indian Tribe, were convicted of kidnapping and rape in a Nebraska state court. Their convictions were affirmed by the Nebraska Supreme Court. State v. Tyndall, 187 Neb. 48, 187 N.W.2d 298 (1971); State v. Goham, 187 Neb. 35, 187 N.W.2d 305 (1971), cert. denied, 404 U.S. 1004, 92 S. Ct. 561, 30 L.Ed.2d 558. The crimes were committed on the Omaha Indian Reservation and the State of Nebraska exercised jurisdiction pursuant to 18 U.S.C. § 1162(a) (1970).[1] On October 24, 1970, while the direct appeals from the convictions were pending in the Nebraska Supreme Court, the Secretary of the Interior accepted retrocession of jurisdiction over the Omaha Indian Reservation pursuant to an offer of retrocession previously made by the Nebraska Legislature in accordance with 25 U.S.C. § 1323(a) (1970). The offer of retrocession (Nebraska Legislative Resolution 37) contained no express provision for saving pending prosecutions. The petitioners contend that they were denied due process of law since the Nebraska courts, in absence of an express provision saving pending cases, were without jurisdiction as of 12:01 A.M. EST on October 25, 1970. On this basis, the United States District Court for the District of Nebraska ordered the prisoners released.

The same jurisdictional issue was presented to the Nebraska Supreme Court at the time of direct appeal. However, the Nebraska Supreme Court held that the purported retrocession was invalid since the partial acceptance of jurisdiction by the Secretary of Interior was not in accordance with the terms of the offer. In so holding, the court found it unnecessary to pass on what effect a valid retrocession would have on pending state prosecutions. State v. Goham, supra at 312. Subsequent to that decision, this court affirmed federal dis-

---

1. Tit. 18 U.S.C. § 1162(a) provided:
 "Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

 State or Territory of — Indian country affected

 Alaska . . . All Indian country within the State, except that on Annette Islands, the Metlakatla Indian community may exercise jurisdiction over offenses committed by Indians in the same manner in which such jurisdiction may be exercised by Indian tribes in Indian country over which State jurisdiction has not been extended.

 California . . . All Indian country within the State.

 Minnesota . . . All Indian country within the State, except the Red Lake Reservation.

 Nebraska . . . All Indian country within the State.

 Oregon . . . All Indian country within the State, except the Warm Springs Reservation.

 Wisconsin . . . All Indian country within the State."

trict court rulings that the validity of the retrocession was a question of federal law and that in fact the retrocession was valid and effective. See Omaha Tribe of Nebraska v. Village of Walthill, 460 F.2d 1327 (8 Cir. 1972), aff'g 334 F.Supp. 823 (D.Neb.1971), cert. denied, 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973); United States v. Brown, 334 F.Supp. 536 (D.Neb.1971); see also Robinson v. Wolff, 349 F.Supp. 514 (D. Neb.1972), aff'd 468 F.2d 438 (8 Cir. 1972).

The petitioners thereafter sought habeas relief in the federal district court. Initially the federal district court dismissed the petitions for failure to exhaust available state remedies. The district court ruled that the Nebraska Supreme Court should have the opportunity to determine what effect a valid retrocession would have on the state-imposed convictions in view of the Nebraska Legislature's failure to include a savings clause regarding pending cases. See Goham v. Wolff, CV71–L–365 (D.Neb., Feb. 7, 1972).

Thereupon the petitioners sought leave to docket original petitions for writs of habeas corpus in the Supreme Court of Nebraska. On April 10, 1972, leave was denied by that court without opinion. On reapplication to the federal district court, the Nebraska Supreme Court's action was construed as either a waiver of the exhaustion requirement or as having accomplished exhaustion and the court proceeded to a resolution on the merits. We hold this to be error.[2]

In Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), the Supreme Court noted:

"We emphasize that the federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' Ex parte Royall, supra, 117 U.S. 241, at 251, 6 S.Ct. 734,

29 L.Ed. 868, it is not sufficient merely that the federal habeas applicant has been through the state courts."

We hold the mere denial, without opinion, of a motion to docket a writ of habeas corpus in the Supreme Court of Nebraska is not a sufficient basis upon which to conclude that a final waiver or exhaustion of remedy has been effectuated. This was earlier recognized by the United States Supreme Court in another case originating from Nebraska. In Ex parte Hawk, 321 U.S. 114, 116, 64 S.Ct. 448, 449, 450, 88 L.Ed. 572 (1944), the Supreme Court of the United States observed:

"But, as was pointed out by the District Court and Circuit Judge, petitioner has not yet shown that he has exhausted the remedies available to him in the state courts, and he is therefore not at this time entitled to relief in a federal court or by a federal judge.

"So far as appears, petitioner's present contentions have been presented to the state courts only in an application for habeas corpus filed in the Nebraska Supreme Court, which it denied without opinion. From other opinions of that court it appears that it does not usually entertain original petitions for habeas corpus, but remits the petitioner to an application to the appropriate district court of the state, from whose decision an appeal lies to the state Supreme Court, Williams v. Olson, 143 Neb. 115, 8 N.W. 2d 830, 831; see In re White, 33 Neb. 812, 814–815, 51 N.W. 287. . . .

"Of this remedy in the state court petitioner has not availed himself."

See also Hawk v. Olson, 66 F.Supp. 195, 197 (D.Neb.1946), aff'd 160 F.2d 807 (8 Cir. 1947), cert. denied, 332 U.S. 779, 68 S.Ct. 44, 92 L.Ed. 363. Although it may seem burdensome and time consuming to require proper exhaustion of state remedy, nevertheless, respect for the policy of federal-state comity must be main-

---

2. Although the state has not raised the exhaustion issue on this appeal, in the interests of comity this court will consider it sua sponte. See Blackwell v. Wolff, 454 F.2d 48, 50 (8 Cir. 1972).

tained. These are state prisoners and the basic problems presented, even though they may deal directly or only peripherally with federal law, should be first passed upon by the state courts of Nebraska.[3] We are aware that the district court is committed to the importance of the exhaustion doctrine. The same trial judge when he first denied the petitions for failure to exhaust state remedy cogently observed:

"Having made no decision as to the effect of a valid retrocession and having now available the decisions and opinions of federal judges of this district on the validity of the retrocession, the Supreme Court of Nebraska now should be afforded the opportunity to reconsider the issue of the validity of the retrocession and to consider the effect of the retrocession on the state court's jurisdiction, if the retrocession was valid. It is conceivable that such reconsideration and consideration would serve the worthy purpose of obviating the need of a decision by a federal court on the effect of a valid retrocession. But a larger purpose also would be served: The state court system would decide initially its own jurisdiction. Even if a federal court thereafter must face the same issue, there is a proper reluctance on the part of the federal judiciary to confront the issue of the state court's jurisdiction until the state's supreme court has decided the matter on each ground being asserted. See United States v. McMann, 373 F.2d 759 (C.A. 2nd Cir. 1967)." Goham v. Wolff, CV71–L–365 (Memorandum Re Motion For New Trial, D. Neb. Mar. 24, 1972).

3. Although we do not pass on the question, it may well be that the issue of whether the Nebraska Legislature intended to abandon jurisdiction as to pending cases is essentially a question of state rather than federal law. Although the validity of the final acceptance as to retrocession has been determined to be an issue of federal law, this does not necessarily relegate all collateral issues to federal questions. Cf. Omaha Tribe

We endorse and adopt this statement as still viable and relevant to the ultimate determination of these cases.

We simply hold that the federal district court misconstrued the legal effect of the Nebraska Supreme Court's denial of leave to the petitioners to docket their petition for habeas corpus as original actions in that court. This constituted neither waiver by the state nor exhaustion by the petitioners. Ex parte Hawk, supra. We deem it axiomatic that the Nebraska Supreme Court may in the interest of proper state practice and procedure initially require a party to file a petition for a writ of habeas corpus in the state trial court.

Judgment reversed and remanded with directions to dismiss the petitions on the grounds that petitioners have failed to exhaust their state remedies.

of Nebraska v. Village of Walthill, 334 F.Supp. 823 (D.Neb.1971). If it is determined that the issue is one of state law, then there exists even greater reason why the Nebraska state courts should initially pass on the question. If this is so, the interpretation by the state court of the state resolution could avoid the necessity of dealing with the federal constitutional issue.