**Dennis TYNDALL, Petitioner,**

v.

**Frank GUNTER and John Dahm, Respondents.**

**CV86–L–360.**

United States District Court, D. Nebraska.

April 30, 1987.

642

Dorothy Walker of Mowbray, Chapin & Walker, Lincoln, Neb., for petitioner.

Laura Freppel, Asst. Atty. Gen., Lincoln, Neb., for respondents.

## JUDGMENT

URBOM, District Judge.

I accept the report and recommendation of the magistrate dated March 6, 1987, filing 21, and

IT THEREFORE IS ORDERED that the application for writ of habeas corpus is denied.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate.

The petitioner, Dennis Tyndall, an inmate at the Nebraska Department of Correctional Services, Lincoln Correctional Center, has submitted an amended petition for habeas corpus pursuant to 28 U.S.C. § 2254. The parties have submitted briefs in support of their respective positions, and the matter is now before me for a report and recommendation on the merits of the issues raised.[1]

The procedural history of this unique case is rather long and complicated, but an understanding of its history is essential to a proper appreciation of its present status. What follows is merely a brief overview.

On July 26, 1969, a woman was kidnapped and raped in Big Elk Park, within the Omaha Indian Reservation in Thurston County, Nebraska. Two of the men involved were the petitioner, Dennis Tyndall, and Wayne Goham, both of whom were enrolled members of the Omaha Tribe of Indians. Both men were tried and convicted of kidnapping and rape in the District Court of Thurston County. Jurisdiction was exercised pursuant to 18 U.S.C. § 1162(a) (1970), in which Congress, in 1953, had ceded to Nebraska exclusive criminal and civil jurisdiction over offenses committed by or against Indians in the Omaha and Winnebago Reservations in Nebraska. Goham was tried, convicted, and sentenced in March of 1970. Tyndall was tried and convicted on October 15, 1970, and was sentenced on October 26, 1970. As of October 24, 1970, Goham's appeal to the Nebraska Supreme Court was pending, and Tyndall filed an appeal shortly thereafter.

---

1. In their answer the respondents initially contended that the petitioner has failed to exhaust his available state court remedies. However, in their brief they now wisely concede that the petitioner's claim should be treated as exhausted. From the discussion of the history of this case that follows, it is clear that it would be futile for him to pursue his state court remedies, given the Nebraska Supreme Court's rejection of the identical claim in *State v. Goham*, 191 Neb. 639, 216 N.W.2d 869 (1974).

Meanwhile, in 1968, the Congress had authorized the United States to accept a retrocession by any state of "all or any measure of the criminal or civil jurisdiction ... acquired by such State pursuant to the provisions of section 1162 of Title 18 ..." 25 U.S.C. § 1323(a). In response, in 1969 the Nebraska Legislature passed Resolution 37, which offered to retrocede all criminal jurisdiction over offenses committed by or against Indians in Indian country located in Thurston County, Nebraska, with the exception of traffic offenses. This offer of retrocession was accepted in part by the Secretary of the Interior, acting under his authority provided in Executive Order 11435. In keeping with the respective wishes of the two tribes, the Secretary accepted the jurisdiction over the Omaha Tribe, but declined the jurisdiction over the Winnebago Tribe. The Secretary's acceptance was published in the Federal Register on October 24, 1970, and by its terms became effective on October 25, 1970, at 12:01 a.m. EST. Dissatisfied with the partial acceptance of jurisdiction, in 1971 the Nebraska Legislature passed Resolution 16, which purported to withdraw the earlier offer of retrocession.

In their direct appeals, Goham and Tyndall contended that they were denied due process of law because the Nebraska courts, in the absence of an express provision saving pending cases, lost jurisdiction over their cases as of 12:01 a.m. EST on October 25, 1970. The Nebraska Supreme Court rejected this contention, holding that the purported retrocession was invalid because the partial acceptance was not in accordance with the terms of the offer. *State v. Goham,* 187 Neb. 34, 46–48, 187 N.W.2d 305, *cert. denied,* 404 U.S. 1004, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). The court thus found it unnecessary to decide what effect a valid retrocession would have on pending prosecutions. *Id.,* 187 Neb. at 48, 187 N.W.2d 305. Subsequently, however, the federal courts ruled that the validity of the retrocession was a question of federal law, and held that the retrocession was in fact valid and effective, so as to give the United States exclusive jurisdiction for offenses committed after October 25, 1970.

See *Omaha Tribe of Nebraska v. Village of Walthill,* 334 F.Supp. 823 (D.Neb.1971), *aff'd,* 460 F.2d 1327 (8th Cir.1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973); *United States v. Brown,* 334 F.Supp. 536 (D.Neb.1971).

Goham and Tyndall then sought federal habeas relief in this court. Their cases, CV71–L–365 and CV71–L–366, were consolidated as both involved no factual dispute and presented the same legal issue. Initially, Judge Urbom dismissed the petitions for failure to exhaust available state court remedies. *Goham v. Wolff,* CV71–L–365 (D.Neb. unpublished memorandum of decision dated February 7, 1972). Thereafter, Goham and Tyndall sought and were denied leave to docket original petitions for writs of habeas corpus in the Supreme Court of Nebraska. On reapplication in federal court, Judge Urbom treated the Nebraska Supreme Court's action as either a satisfaction or waiver of the exhaustion requirement, and proceeded to a resolution of the merits. *Goham v. Wolff,* CV71–L–365 (D.Neb. unpublished memorandum of decision dated May 26, 1972) at 2. Habeas relief was then granted, on the basis that the Nebraska state courts lost jurisdiction over the petitioners' cases because the Nebraska Legislature failed to provide an express provision in Resolution 37 saving pending prosecutions. *Id.* at 4–6.

On appeal the Eighth Circuit reversed and remanded, with directions that the petitions be dismissed for failure to exhaust state remedies. *Goham v. Wolff,* 471 F.2d 52 (8th Cir.), *cert. denied,* 414 U.S. 834, 94 S.Ct. 174, 38 L.Ed.2d 69 (1973). In so doing, the Eighth Circuit noted as follows:

Although we do not pass on the question, it may well be that the issue of whether the Nebraska Legislature intended to abandon jurisdiction as to pending cases is essentially a question of state rather than federal law. Although the validity of the final acceptance as to retrocession has been determined to be an issue of federal law, this does not necessarily relegate all collateral issues to federal questions. *Cf. Omaha Tribe of Nebraska v. Walthill,* 334 F.Supp. 823 (D.Neb.1971).

If it is determined that the issue is one of state law, then there exists even greater reason why the Nebraska state courts should initially pass on the question. If this is so, the interpretation by the state court of the state resolution could avoid the necessity of dealing with the federal constitutional issue.

*Id.* at 55 n. 3.

Thereafter, Goham filed an action for post-conviction relief in the District Court of Thurston County, Nebraska. The district court denied relief, and that denial was affirmed on appeal by the Nebraska Supreme Court in *State v. Goham,* 191 Neb. 639, 216 N.W.2d 869 (1974). Although adhering to its earlier view that the retrocession had not been validly accepted, the court observed that the effect of the retrocession on pending state criminal cases was primarily a question of state law, to be decided by the state courts in the first instance. *Id.* at 641, 216 N.W.2d 869. The court went on to hold that even if the retrocession had been effective, the state courts did not lose jurisdiction over cases pending at 12:01 a.m. EST, October 25, 1970. This was because the Nebraska Legislature, in enacting Resolution 37, did not intend to abandon jurisdiction over crimes committed on the Omaha Reservation prior to the effective date of the retrocession. *Id.* at 644, 216 N.W.2d 869. In reaching this determination, the court employed the rule of construction that it give effect to the presumed intent of the legislature to reach a "sensible, just, and reasonable result," *id.* at 642, 216 N.W.2d 869, and avoid, in its view, an "absurd or glaringly unjust result[ ]". *Id.* at 644, 216 N.W.2d 869 (*quoting Sorrells v. United States,* 287 U.S. 435, 450, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932)). The court observed that unless the state court retained jurisdiction, the petitioner and others similarly situated would be able "to exploit their crimes with complete impunity," as there could be no federal jurisdiction over offenses committed prior to the effective date of the retrocession. *Id.* at 642–43, 216 N.W.2d 869. For further support, the court relied upon Neb.Rev.Stat. § 49–301 (Reissue 1943), the general savings clause enacted by the Nebraska Legislature in relation to the repeal of statutes. Although noting that the general savings statute was not strictly applicable, the court noted that it nonetheless provided guidance in determining the legislature's intent in similar situations. *Id.* at 643, 216 N.W.2d 869.

A little over twelve years after the Nebraska Supreme Court's decision was handed down, petitioner Tyndall has now come back to reapply for federal habeas relief in this court.[2] In essence, the petitioner asks this court to reaffirm its prior ruling and grant him habeas relief. Given the Nebraska Supreme Court's decision in this matter, however, I conclude that this court is not at liberty to do so.

Under 28 U.S.C. § 2254(a), a federal court may grant a writ of habeas corpus for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In the present case, the petitioner contends that his conviction deprived him of due process of law because the state court lost jurisdiction over his case before his conviction was final. As will be discussed below, however, the petitioner's contention ultimately rests upon an alleged misinterpretation of state law by the Nebraska Supreme Court. This is not a proper ground for federal habeas relief, and I shall accordingly recommend that the petition be denied.

In an effort to base his claim on federal law, the petitioner implies that the jurisdictional issue involved here is controlled by the Supremacy Clause, Article VI, clause 2

**2.** Rule 9 of the Rules Governing § 2254 Cases provides that a court may in some circumstances dismiss delayed or successive habeas petitions as an abuse of the writ, but the respondents have wisely not argued that this rule applies in the present case. Although no reason has been given for the twelve year delay, it is apparent that, given the strictly legal-jurisdictional nature of the petitioner's claim and the absence of controverted facts, the respondents have not been prejudiced in their ability to respond. Nor ought this petition be deemed a successive petition, as this court's prior determination of the petitioner's claim was not a decision on the merits. Advisory Committee Note to Rule 9(b).

of the United States Constitution, which essentially provides that where there is a conflict between state and federal law, federal law governs. In the present case, however, the conflict is more apparent than real.

Petitioner places heavy reliance on the decisions of the federal courts in *Omaha Tribe of Nebraska v. Village of Walthill,* 334 F.Supp. 823 (D.Neb.1971), *aff'd,* 460 F.2d 1327 (8th Cir.1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973), and *United States v. Brown,* 334 F.Supp. 536 (D.Neb.1971). The petitioner broadly reads these cases as standing for the proposition that at 12:01 a.m. EST on October 25, 1970, the state courts of Nebraska lost *all* jurisdiction over cases charging crimes committed by or against Indians within the Omaha Reservation, because at that moment all such jurisdiction vested exclusively within the United States. Such an expansive reading is not appropriate, however, for it disregards an important factual distinction between these cases and the case at hand. In both *Walthill* and *Brown,* the courts were faced with a direct conflict between the federal and state governments, as both purportedly had the exclusive authority to prosecute criminal violations occurring after October 25, 1970. In resolving this conflict, the courts held that the federal government had exclusive jurisdiction over offenses committed *after* October 25, 1970, the effective date of the retrocession. No such conflict exists in the present case, however, as no one contends that the federal government had jurisdiction over offenses committed *before* October 25, 1970. *Walthill* and *Brown* do not purport to be concerned with pending cases, and thus do not logically or necessarily compel the result that Nebraska lost jurisdiction over petitioner's case. Accordingly, although the federal government possessed the exclusive jurisdiction over offenses occurring after October 25, 1970, the state could nonetheless retain jurisdiction after that point to complete the prosecution of then-pending cases, cases over which only the state of Nebraska has asserted jurisdiction.

The petitioner next contends that the issue of whether the state court lost jurisdiction is a matter of federal statutory law. Under the terms of 25 U.S.C. § 1323(a), in transferring jurisdiction back to the United States, acts on the part of both the state of Nebraska and the federal government were necessary. Nebraska first had to offer, and the United States then had to accept, the retrocession. The petitioner suggests that what is important is not the intent of the Nebraska Legislature in offering to send jurisdiction back to the United States, but rather the intent of the Secretary of the Interior in accepting the offer of retrocession, which is a matter of federal statutory law. Such an approach was appropriately taken by the courts in *Walthill* and *Brown,* in which the United States had a strong interest, after spending resources in order to prospectively enforce the criminal law within the Omaha Reservation, in seeing that federal jurisdiction revert back to it. However, this would not be appropriate in the present context, involving the continued prosecution of pending cases by the state of Nebraska over which the United States has asserted no interest. As the United States Supreme Court has observed,

> Public Law 280 ... [—which effected an immediate cession of criminal and civil jurisdiction over Indian country in five states, including Nebraska—] was enacted by Congress in 1953 in part to deal with the "problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Bryan v. Itasca County,* 426 U.S. 373, 379 [96 S.Ct. 2102, 2106, 48 L.Ed.2d 710] [1976]; H.R.Rep. No. 848, 83d Cong., 1st Sess., 5–6 (1953).

*Washington v. Yakima Indian Nation,* 439 U.S. 463, 471, 99 S.Ct. 740, 746, 58 L.Ed.2d 740 (1979). In analyzing the situation with respect to the initial cession of jurisdiction to the states in 1953, the federal courts looked to federal law to determine what jurisdiction Congress had both the intent and the authority to transfer, but then looked to state law to determine the intent and the authority of the states to accept such jurisdiction. *See, e.g., Robinson v. Wolff,* 349 F.Supp. 514, 519–24

(D.Neb.), *aff'd*, 468 F.2d 438 (8th Cir.1972); *Anderson v. Gladden*, 293 F.2d 463, 467–68 (9th Cir.1961), *cert. denied*, 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344 (1961). Acting under this congressional grant of authority, the state of Nebraska undertook to deal with the perceived problem of lawlessness by enforcing the criminal laws on the reservations, until such time as the federal government reasserted such jurisdiction. Given this, it seems only appropriate and consistent to look to the intent of the Nebraska Legislature, in offering to transfer jurisdiction to the United States, with respect to the treatment of pending cases.[3]

Petitioner's main argument, however, is based on the Fourteenth Amendment. The petitioner contends that it is a violation of due process to be sentenced to imprisonment by a court having no jurisdiction to do so. Numerous decisions can be found in which the United States Supreme Court has stated that the writ of habeas corpus may be granted where the sentencing court lacked jurisdiction, either because jurisdiction was absent from the outset or because it was lost in the course of the proceedings. *See, e.g., Frank v. Mangum*, 237 U.S. 309, 327, 35 S.Ct. 582, 587, 59 L.Ed. 969 (1915). However, the parties have not cited, and the court has been unable to find, any case decided by the United States Supreme Court in which the writ of habeas corpus was granted solely on the basis that the state court lacked jurisdiction as a matter of state law. *See, e.g., Collins v. Johnston*, 237 U.S. 502, 507–09, 35 S.Ct. 649, 651–52, 59 L.Ed. 1071 (1915), where the Court considered, and ultimately rejected, as a basis of habeas relief the petitioner's contention that the state judge lacked jurisdiction under the state constitution. "Assuming the question to be open here, we see no reason to disagree with the meaning thus attributed to the constitution by the courts of the State." 237 U.S. at 508–09, 35 S.Ct. at 652.[4]

Accordingly, it is not at all clear that a federal writ of habeas corpus can be granted on the ground that the state court lacked jurisdiction under state law.[5] As-

---

**3.** In addition, in *Waithill* and *Brown* the courts determined that the Secretary of the Interior had the authority to accept *less* jurisdiction (in terms of geographic territory) than Nebraska had offered to retrocede. However, there is no contention that the United States could, or did, accept back *more* in the way of jurisdiction (in terms of time) than was offered by Nebraska.

**4.** *But see Ex parte Kozlowski*, 277 F. 83 (D.Del. 1921). In *Kozlowski*, the federal district court granted the writ on the basis that the sentencing court, by imposing a sentence in excess of that authorized by the state statute, lacked jurisdiction to imprison the petitioner. 277 F. at 87–89. This decision appears to be of dubious validity, however. The court noted that a lower state court had denied the petitioner's petition for writ of habeas corpus after determining that the petitioner was being lawfully held, *id.* at 90, but it is unclear whether the same claims had been presented in the state and federal courts. *See id.* at 90–91 ("I can but believe that had the aspects of the matter presented to this court been called to [the state judge's] attention ... the proceedings in this court would have been unnecessary"). Thus, there would appear to be a failure on the part of the federal court either to enforce the exhaustion requirement or to give appropriate deference to the determination of state law by the state courts.

The petitioner also relies on *In re Kelly*, 46 F. 653 (C.C.D.Ore.1890). Regardless of whether this case suffers from the same deficiencies as *Kozlowski, supra,* it is nonetheless readily distinguishable from the present case. In *Kelly,* the petitioner had been confined in jail by a state justice of the peace pending a grand jury investigation. The federal court granted the writ on the basis that had an offense been committed, it was clear that it was committed in a county over which the justice of the peace had no jurisdiction. 46 F. at 659. There has traditionally been a very strong interest in seeing that courts of limited jurisdiction, such as the state justice of the peace in *Kelly,* remain within the strict boundaries of their authority. *Cf. Stump v. Sparkman,* 435 U.S. 349, 356–57 and n. 7, 98 S.Ct. 1099, 1104–05 and n. 7, 55 L.Ed.2d 331 (judges with limited, as opposed to general, jurisdiction are more vulnerable to lose judicial immunity by acting in the "clear absence of all jurisdiction"). Such a strong concern is not present, however, with respect to the District Court of Thurston County, a court of general, rather than limited, jurisdiction. Neb. Const. Art. V., § 9; Neb.Rev.Stat. 24–302 (Reissue 1979). In addition, the federal judge in *Kelly* strongly hinted that in the hearing before him the petitioner had demonstrated a factual showing of innocence. *See* 46 F. at 659–60. No such showing has been made in the present case.

**5.** The primary reason for the confusion in this area is because the term "jurisdiction," as that term is presently understood, apparently en-

suming, without deciding, that federal habeas relief may be granted on this basis, this court would nonetheless be bound by the Nebraska Supreme Court's determination that the Nebraska courts did not lose jurisdiction over the petitioner's case.[6] *Cf. Chapman v. California,* 423 F.2d 682 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970) (whether state waived jurisdiction over petitioner—when after granting parole it turned him over to the INS for deportation—was a question of state law).

Matters involving only the construction of state law are to be determined by the state's highest court, whose determination is binding on the federal courts. *See, e.g., Brown v. Ohio,* 432 U.S. 161, 167, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977); *Garner v. Louisiana,* 368 U.S. 157, 159, 82 S.Ct. 248, 249, 7 L.Ed.2d 207 (1961).[7] Unless

compasses far less today than it did under the common law, which had a profound impact on the interpretation of federal habeas law as late as the outset of this century. Beginning in 1867, federal courts were empowered to grant the writ of habeas corpus to any person restrained "in violation of the constitution or any treaty or law of the United States." 14 Stat. 385. Yet, at this time, the rule was well-established that the writ was not to issue where the sentencing court had jurisdiction, as that term was understood under the common law. *See, e.g., Ex parte Crouch,* 112 U.S. 177, 180, 5 S.Ct. 96, 96–97, 28 L.Ed. 690 (1884); *Duncan v. McCall,* 139 U.S. 449, 454, 11 S.Ct. 573, 574, 35 L.Ed. 219 (1890). Thus, because the writ was limited to claims based on a lack of jurisdiction, *see, e.g., Knewel v. Egan,* 268 U.S. 442, 445, 45 S.Ct. 522, 524, 69 L.Ed. 1036 (1925), the Court had to incorporate various federal constitutional claims into the rubric of "jurisdiction" to afford a basis of federal habeas relief. *See, e.g., Moore v. Dempsey,* 261 U.S. 86, 91, 43 S.Ct. 265, 266–67, 67 L.Ed. 543 (1923) (where trial is dominated by mob in violation of due process, results in a loss of jurisdiction). Later, due process was elevated to an independent ground for relief, rather than a mere component of the test of jurisdiction. *Waley v. Johnston,* 316 U.S. 101, 104–05, 62 S.Ct. 964, 966, 86 L.Ed. 1302 (1942). Thereafter, other federal constitutional claims followed suit, and eventually were also cognizable in federal habeas corpus proceedings. *See, e.g., Brown v. Allen,* 344 U.S. 443, 508, 73 S.Ct. 397, 447, 97 L.Ed. 469 (1953).

I have been unable to find any case decided by the United States Supreme Court which has granted the writ to a state prisoner based on a "jurisdictional" claim that was not predicated on an independent violation of federal constitutional or statutory law. *See, e.g., Moore v. Dempsey,* 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543 (1923) (state court lacked jurisdiction because mob-dominated trial violated due process of law); *Ex parte Medley,* 134 U.S. 160, 166, 10 S.Ct. 384, 386, 33 L.Ed. 835 (1890) (state court lacked jurisdiction because conviction violated prohibition against ex post facto laws); *In re Mayfield,* 141 U.S. 107, 11 S.Ct. 939, 35 L.Ed. 635 (1891); *Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883) (under federal statutory and treaty law, state court lacks jurisdiction over offense committed by Indian in Indian

country). Thus, it would appear that federal habeas relief is limited to those jurisdictional claims that are based on a construction of federal law, whether it be a statute, treaty, or the Constitution.

**6.** Some lower federal court decisions considering the sufficiency of state indictments have indicated that where the indictment is so deficient that it fails to allege a violation of state law, thereby depriving the state court of jurisdiction, the federal court may grant habeas relief. *See, e.g., Hamilton v. McCotter,* 772 F.2d 171, 184 (5th Cir.1985); *Lowery v. Estelle,* 696 F.2d 333, 337–38 (5th Cir.1983); *DeBenedictus v. Wainwright,* 674 F.2d 841, 842–43 (11th Cir. 1982). However, even in this line of cases, the courts have held that the federal court is bound to respect the state court's determination of the sufficiency of the indictment. *See, e.g., Bueno v. Beto,* 458 F.2d 457, 459 (5th Cir.), *cert. denied,* 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972); *Murphy v. Beto,* 416 F.2d 98, 100 (5th Cir.1969). Accordingly, it appears that in not one of these cases has the writ been granted on the basis of such a jurisdictional claim.

**7.** The petitioner has pointed to nothing to indicate that this fundamental rule should not be followed in the present case. One possible factor to the contrary is the federal government's plenary power over the affairs of Indians. The court in *Brown* placed heavy reliance upon this factor in determining that the effect of the retrocession was be a matter of federal, not state law. 334 F.Supp. at 540–41. It made sense to focus on such a special interest in *Brown,* where the court noted that the federal government had expended large amounts of resources, in terms of time and money, in order to prospectively enforce the criminal law in the Omaha Reservation. *Id.* at 540. However, such a concern is absent with respect to pending cases over which the federal government has never asserted jurisdiction.

Another consideration which may be relied upon by the petitioner is the principle that ambiguities in statutes, documents, and treaties affecting retained tribal sovereignty are to be resolved in favor of the Indians. See cases collected in *Washington v. Yakima Indian Nation,* 439 U.S. 463, 502–03 n. 1, 99 S.Ct. 740, 762 n. 1, 58 L.Ed.2d 740 (Marshall, J., dissenting).

such a construction violates fundamental rights guaranteed by the federal constitution, it cannot form the basis of habeas relief. *See, e.g., In re Converse,* 137 U.S. 624, 11 S.Ct. 191, 34 L.Ed. 796 (1891); *State ex rel. Bailey v. Shepard,* 584 F.2d 858 (8th Cir.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1259, 59 L.Ed.2d 481 (1979). In the present case, it appears that the Nebraska Supreme Court, in interpreting Resolution 37 as containing an implicit savings clause, has not violated the federal constitution.

Judge Urbom, in finding that the Nebraska state courts lost jurisdiction over the petitioner's case, relied upon the failure of the Nebraska Legislature to include within Resolution 37 an express provision saving pending prosecutions. *Goham v. Wolff,* CV71–L–365 (D.Neb. unpublished memorandum of decision dated May 26, 1972) at 4–6. In so interpreting state law, Judge Urbom's decision was clearly in keeping with existing federal case law on the subject. *See, e.g., Forsyth v. United States,* 9 How. 571, 577, 50 U.S. 601, 607, 13 L.Ed. 262 (1850); *Moore v. United States,* 85 F. 465, 468–71 (8th Cir.1898); *United States v. Baum,* 74 F. 43, 45–46 (C.C.D.Utah 1896). Judge Urbom relied primarily on *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934). However, like the other federal law in this area, the Court's decision in *Chambers* is based not on the federal constitution, but rather a common law rule of construction. *See* 291 U.S. at 226, 54 S.Ct. at 436. Unlike the present case, involving a legislative transfer of jurisdiction from Nebraska to the United States, *Chambers* involved a repeal of the underlying criminal law by a federal constitutional amendment. Like Nebraska Legislative Resolution 37, however, the Twenty-first Amendment did not contain a clause saving pending prosecutions. The Court observed:

> In case a statute is repealed or rendered inoperative, no further proceedings can be held to enforce it in pending prosecu-

tions unless competent authority has kept the statute alive for that purpose. 291 U.S. at 223, 54 S.Ct. at 435. In *Chambers,* no "competent authority" had kept the underlying criminal offense in effect, as neither Congress nor the courts had the constitutional power to vary the terms or effect of the constitutional amendment, in which the people, not the national legislature, had acted to repeal the underlying criminal law. *Id.,* 291 U.S. at 223–24, 54 S.Ct. at 435–36.

Since the first decision in this case by Judge Urbom, the Nebraska Supreme Court has determined the intent of the Nebraska Legislature underlying Resolution 37. This resolution was a legislative act undertaken by the Nebraska Legislature, rather than a popular referendum enacted by the people of Nebraska. Accordingly, unlike *Chambers,* there was no such constitutional barrier preventing the Nebraska Supreme Court from applying the usual state rules of construction in interpreting Resolution 37 as containing a savings clause. Its decision on the matter constitutes the "competent authority" found lacking in *Chambers.* I am therefore unable to say that the Nebraska Supreme Court's construction of Resolution 37 is constitutionally deficient.

IT THEREFORE IS HEREBY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus be denied.

The petitioner is hereby notified that unless objection is made within eleven days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

However, there is no indication that the state of Nebraska is required, as a matter of federal constitutional law, to construe its statutes in such a manner, and I have been unable to find any case in which a federal habeas court has granted the writ on this basis.